879 A.2d 58

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND,

v.

Ada Elizabeth CHERRY–MAHOI.

Misc. AG No. 45, Sept. Term, 2004.

Court of Appeals of Maryland.

July 21, 2005.

126

Glenn M. Grossman, Deputy Bar Counsel (Melvin Hirshman, Bar Counsel, Attorney Grievance Commission of Maryland), for petitioner.

Terri D. Mason of Mason Davies, P.C., Baltimore, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BATTAGLIA, J.

The Attorney Grievance Commission of Maryland ("Petitioner" or "Bar Counsel"), acting through Bar Counsel and pursuant to Maryland Rule 16–751(a),[1] filed a petition for

1. Maryland Rule 16–751(a) provides:

disciplinary or remedial action against Respondent, Ada Elizabeth Cherry–Mahoi, on September 15, 2004. The Petition alleged that Respondent, who was admitted to the Bar of this Court on December 18, 1990, violated several Maryland Rules of Professional Conduct ("MRPC"), specifically, 1.1 (Competence),[2] 1.3 (Diligence),[3] 1.4 (Communication),[4] 1.5 (Fees),[5] 1.15 (Safekeeping Property),[6] 1.16(d) (Declining or Terminating

---

(a) **Commencement of disciplinary or remedial action.** (1) Upon approval or direction of the [Attorney Grievance] Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

**2.** Rule 1.1 provides:

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

**3.** Rule 1.3 provides:

A lawyer shall act with reasonable diligence and promptness in representing a client.

**4.** Rule 1.4 provides:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

**5.** Rule 1.5 provides in relevant part:

A lawyer's fee shall be reasonable.

**6.** Rule 1.15 provides in relevant part:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.
(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the

Representation),[7] 8.1 (Bar Admission and Disciplinary Matters),[8] 8.4 (Misconduct),[9] Maryland Rule 16–606 (Name and Designation of Account),[10] Maryland Rule 16–609 (Prohibited Transactions),[11] and Section 10–306 of the Business Occupa-

---

client or third person, shall promptly render a full accounting regarding such property.

**7.** Rule 1.16(d) provides:
Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

**8.** Rule 8.1 provides:
An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
(a) knowingly make a false statement of material fact; or
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rules does not require disclosure of information otherwise protected by Rule 1.6.

**9.** Rule 8.4 provides in part:
It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice....

**10.** Maryland Rule 16–606 provides:
An attorney or law firm shall maintain each attorney trust account with a title that includes the name of the attorney or law firm and that clearly designates the account as "Attorney Trust Account", "Attorney Escrow Account", or "Clients' Funds Account" on all checks and deposit slips. The title shall distinguish the account from any other fiduciary account that the attorney or law firm may maintain and from any personal or business account of the attorney or law firm.

**11.** Maryland Rule 16–609 provides:

tions and Professions Article of the Maryland Code (2000, 2004 Repl.Vol.) (Misuse of Trust Money).[12]

In accordance with Maryland Rules 16–752(a) and 16–757(c),[13] we referred the petition to Judge Mickey J. Norman of the Circuit Court for Baltimore County for an evidentiary hearing and to make findings of fact and conclusions of law. On February 2, 2005, Judge Norman held a hearing and on March 10, 2005, issued Findings of Fact and Conclusions of Law, in which he found, by clear and convincing evidence, that Cherry–Mahoi had violated MRPC 1.3, 1.5, 1.15(a) and (b), 1.16(d),[14] 8.1, 8.4, Maryland Rules 16–606 and 16–609, and Section 10–306 of the Business Occupations and Professions Article:

> An attorney or law firm may not borrow or pledge any funds required by these Rules to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose. An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer.

12. Section 10–306 of the Business Occupations and Professions Article provides:
> Misuse of trust money. A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer.

13. Maryland Rule 16–752(a) states:
> (a) Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk is responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing.
> Maryland Rule 16–757(c) states in pertinent part: " The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law . . . . "

14. The hearing judge found a violation of MRPC 1.16(c), but in his conclusions cited the language of MRPC 1.16(d), for which Bar Counsel had alleged a violation. Thus, for purposes of our discussion we refer to section (d) of Rule 1.16.

## Background

"This matter arises from the Respondent's representation of Ms. Clark and her two children who were victims in a personal injury automobile accident. In May 2002, the Respondent settled the claims, received settlement funds and distributed the proceeds to the parties. The Respondent also received and was to hold in trust, personal injury protection funds (PIP) to pay certain unpaid medical providers. Ms. Clark did not immediately authorize the payment of those medical expenses. In October 2002, when those same medical expenses were to be paid, because the Respondent had depleted funds from her trust account, there were insufficient funds in the Respondent's account to satisfy the outstanding medical bills. The Respondent deposited personal funds into her trust account in order to pay the medical bills when they came due. Ms. Clark filed a complaint with the Attorney Grievance Commission. As a result of their investigation the Respondent has been charged with violating the Rules of Professional Conduct.

## Findings of Fact

"The Petitioner alleges that the Respondent was admitted as a member of the Bar of this Court on December.18, 1990 (¶, 2) and (T. 27, lines 21–22).[1] She testified that the majority of her legal work had been in public interest law starting with the Maryland Disability Law Center (T. 59, line 5). From there, she went into private practice for two years and also, on a contractual basis, represented clients for the Public Defender's office (T. 58). Primarily she has worked as a subcontractor for a private attorney who represented children, who were, or alleged to have been, abused and neglected (T. 49, lines 13–16). While working as a subcontractor, the Respondent also maintained an office for the practice of law at 9722 Groffs Mill Drive, Suite 116, Owings Mills, Maryland 21117(¶ 2). However, on her attorney trust account, which is improperly labeled IOLTA, she lists an address of 220 E. Lexington Street, Suite 904, Baltimore, Maryland 21202–3525. The Respondent testified

that, around the time of the incident, which gave rise to the petition, she did not have an active private practice (T. 46, lines 6–9), and in July 2002, she was making an effort to eliminate her private practice of law (T. 51, lines 17–25).

---

[1] The Respondent also said that she had been practicing since December 1989 (T.58, line 5).

"In the Petition for Disciplinary or Remedial Action, Petitioner asserts that Respondent engaged in professional misconduct, as defined by Maryland Rule 16–701(I). This allegation arises from the Complaint filed by Mary Emma Clark who the Respondent represented. The Respondent filed an Answer admitting some of the factual allegations but generally denied any intentional wrongdoing. In its findings of fact, the Court incorporates the allegations listed in this Complaint, outlined by Petitioner in ¶ 4–16 of the Petition for Disciplinary or Remedial Action. At the hearing before the Court, the Petitioner called both the Respondent and John DeBone to testify. The Respondent also testified on her behalf.

"As alleged in the complaint of Mary Clark, and in accordance with the Respondent's own admission, the Court finds as a fact that the Respondent represented Mary Emma Clark and her two children, Rashaad and Ebony Kelly (hereinafter, "Clark case"). That representation sought compensation for injuries arising out of an automobile accident. The case was settled in May 2002 (T. 28, lines 1–10).

"By her own admission, during May 2002, the Respondent settled the Clark case for an aggregate amount of $11,000.00 (¶ 5) (T. 28, lines 14–15). On May 15, 2002, the Respondent deposited that settlement check, into her escrow account, which she improperly labeled "IOLTA" (¶ 6). The Respondent admitted at trial that the account in which she deposited the settlement funds was labeled IOLTA (T. 29, lines 1–3). However, she denies culpability stating she was not familiar with setting up and maintaining escrow accounts (T. 59 line 24 to T. 60 line 3). The Respondent testified that she went to Provident Bank, explained her need to establish

an attorneys escrow account in compliance with the IOLTA rules, and the account was improperly titled by the bank employee who set up the account. The Respondent claims that she relied on the experience of Provident Bank employees and therefore believed that it was permissible for an attorney trust account to carry that title (T. 43, lines 2–19).

"The Respondent admitted, that in addition to receiving the settlement check in the Clark case, Government Employees Insurance Company (GEICO) also issued personal injury protection (PIP) checks to be paid to the Respondent's clients. These checks were forwarded to the Respondent in May 2002(¶ 7). In her answers the Respondent admitted that on or about May 24, 2002, she deposited $4,019.75 representing the PIP benefits into her escrow account. Again on May 28, 2002, the Respondent deposited an additional $117.35 in PIP benefits into that same account (¶ 8). These admissions were corroborated by the testimony of John DeBone a paralegal for the Attorney Grievance Commission. Mr. DeBone has worked for the Attorney Grievance Commission for ten years. His responsibilities include performing attorney trust account analysis, and the attorney trust overdraft program on overdrafts of attorney trust accounts (T. 8, lines 13–23). Mr. DeBone reviewed the Respondent's bank records and prepared a spreadsheet (Petitioner's exhibit 2) analysis of her attorney trust account (T. 9, lines 1–5).

"Mr. DeBone testified that he reviewed Ms. Cherry–Mahoi's escrow account and the related bank records, and confirmed that during May 2002, GEICO issued PIP checks for Ms. Clark and her two children, totaling four thousand, one hundred and thirty-seven dollars and ten cents ($4,137.10) from deposits on the two dates listed above (T. 15, lines 12–16).

"Furthermore, the Respondent testified that, in May 2002, she received PIP benefits on behalf of the Clark family, which she deposited in her trust account (T. 28, lines 16–20). Copies of the Respondent's Provident Bank Rec-

ords were admitted into evidence (Petitioners exhibit 1, sub-exhibit 8).

"Petitioner alleges that, although the money was deposited into Respondent's account, the Respondent failed to notify Ms. Clark of the receipt of the personal injury protection payments from GEICO (¶ 9). Respondent denies this allegation. The respondent testified that: "I had shared with [Ms. Clark] that I had received the checks from her PIP provider ... she told me not to pay the bills because the bills had already been paid." (T. 44, lines 19–23). A review of the personal injury settlement sheets, which were signed by Ms. Clark (sub-exhibits 1–3 of Petitioner's exhibit 1), delineates the PIP funds. The Court finds that the Petitioner has not proven that the Respondent failed to notify Ms. Clark that she had received personal injury protection payments.

"The Petitioner also alleges that the Respondent endorsed the checks in her client's name prior to their deposit. This allegation is corroborated by Petitioner's exhibit 1, sub-exhibit 8. The GEICO PIP checks made out to Mary E. Clark, and those made out to her as guardian of Ebony and Rashaad Kelly, were endorsed in Mary Clark's and Ada Cherry–Mahoi's names by Respondent.

"Petitioner claims that the Respondent failed to make timely payments to medical providers from the funds she maintained in trust for that purpose (¶ 10), and the Respondent failed to maintain funds in trust for the payment of medical providers prior to the payment of said providers (¶ 11). The Provident Bank records (Petitioner's exhibit 1, sub-exhibit 8), and the spreadsheet prepared by Mr. De-Bone (Petitioner's exhibit 2), reveal that between May 2002 and the end of September 2002, the Respondent converted funds from her trust account to her personal use. The Respondent does not deny these facts, however she denies any intentional fraud or misappropriation. Further the Respondent testified that Ms. Clark asked the Respondent to reserve paying certain medical providers, believing that she or her husband's insurance might have paid all or part

of the bills (T. 31, lines 7–10). While waiting to learn if the medical bills had been paid from some other source, the Respondent did not pay the providers (T. 31, lines 17–23). The Respondent does not dispute that she withdrew funds between May and September 2002, and converted them to her personal use. She testified that she "was under the belief that any money remaining in the account would have been my fees because normally my procedure was to go ahead and pay bills almost immediately after receiving the funds." (T. 46 lines 11–14) and (T. 55, lines 2–25). The Respondent testified that, due to her poor record keeping, and that she generally did not keep excessive amounts of money in the account, she believed the money she withdrew belonged to her. The Respondent's belief that any funds remaining in her IOLTA account must have belonged to her, is inconsistent with the evidence in this case.

"The settlement check and PIP payments for the Clark case were all deposited in the Respondent's trust account during May, 2002. The settlement check was deposited on May 15, 2002, and all PIP benefits were deposited by May 28, 2002. The respondent testified that, within two to three weeks of disbursing the proceeds from the settlement, Ms. Clark directed her not to pay medical providers (T. 29, lines 17–25).

"Petitioner: And you recall that Ms. Clark told you, at least at some point, not to pay the providers?

"Respondent: Yes, I do.

"Petitioner: And isn't it true that she told you that roughly at the time that you disbursed money to her in settlement of the case?

"Respondent: It was after that, after the disbursement.

"Petitioner: How long after?

"Respondent: Maybe two or three weeks later.

The disbursement of the proceeds from the settlement was made on May 20, 2002. The PIP checks were deposited after that. Three weeks after paying the proceeds from the settlement would have been sometime during the second

week of June, 2002. It was at that time that the Respondent learned that Ms. Clark did not want the Respondent to pay some of the medical providers. Ms. Clark and the Respondent both knew there was approximately four thousand, one hundred and thirty-seven dollars and ten cents ($4,137.10) in PIP funds held in the Respondent's trust account. Those funds were the subject of the discussion between the Respondent and Ms. Clark to refrain, at that time, from paying certain medical benefits. For the Respondent to say that she "was under the belief that any money remaining in the account would have been my fees" boggles the mind. Especially when she just had a conversation with her client who told her not to pay medical providers from the PIP fees, which the Respondent was then holding in her trust account. By the end of May, 2002, the Respondent had already paid herself more fees from the Clark case than she was entitled. During June, 2002, the same time that she is having the discussion with Ms. Clark about not paying some medical providers with fees from the trust account, the Respondent withdraws twenty four hundred dollars ($2,400.00) from that account. The Respondent had already taken her fee for settling the Clark case. Having just discussed with Ms. Clark her desire to refrain, at least temporarily, from paying certain medical bills (T. 55, lines 2–25), the Respondent knew that she was holding, in her trust account, monies that would eventually be paid to medical providers or surrendered to her clients. The Court finds as a matter of fact that the Respondent knew that she was misappropriating funds that were held in her trust account.

"The Respondent testified that her full-time position was affecting her ability to maintain a private practice (T. 52, lines 1–4). She also testified that she was experiencing professional stress; felt that she was overwhelmed because of the demands of her full-time job. She also claimed to have physical issues; hypertension and an injured leg (T. 61). The Court does not believe that the Respondent has

proven, by a preponderance of the evidence, that these factors are mitigating pursuant to Maryland Rule 16–757(b).

"In October, 2002, when the outstanding medical bills from the Clark case needed to be paid, there were insufficient funds in the Respondent's trust account to satisfy those bills. In order to pay those medical bills, the Respondent testified that she relied on a fee generated by a legal matter she handled for her mother on behalf of a family member. On October 10, 2002, Respondent deposited, into her attorney trust account, a four thousand dollar ($4,000.00) money order (Petitioner exhibit 1, sub-exhibit 8, page 27) provided by Bernice Cherry, Respondent's mother (T. 34, lines 3–14).

"The Respondent testified that she was unaware that it was improper to place a fee into her attorney trust account (T. 34, lines 12–19). The Respondent admits that, but for the four thousand dollars ($4,000.00) received from Bernice Cherry, she would have been unable to pay the outstanding medical bills due from the Clark case (T. 36, lines 5–13). The court finds, as a fact, that the Respondent failed to maintain funds in trust for the payment of medical providers, and that she used her personal funds to pay those providers when the bills became due.

"The Petitioner asserts that the Respondent took a fee greater than that to which she was entitled and that she failed to reimburse to her clients amounts to which she was not entitled (¶ 12). The evidence reveals that the Respondent was entitled to a total fee of $3,663.00 (Petitioner's exhibit 1, sub-exhibits 1–3; and T. 16, lines 16–17). As a fee the Respondent received $1,731.60 for settling Mary Clark's claim and $965.70 per client for settling the claims for Ebony Kelly and Rashaad Kelly. From the Clark case trust account, the Respondent withdrew $4,225.00 in May 2002 and $2,400.00 in June 2002 (T. 17–18; Petitioner's exhibit 1, sub-exhibit 8, and Petitioner's exhibit 2). On June 17, 2002,[2] the Respondent wrote a check, in the amount of $400, made out to "cash" (¶ 15), a violation of Maryland Rule 16–609. As a result of Respondent's withdrawal of monies

from her attorney trust account in excess fees due her, she was forced to pay medical providers with funds she received from her mother, a person not associated with the Clark case (¶ 13). The Court finds as a fact that the Respondent took an amount of money greater than that to which she was entitled, and that she failed to reimburse to her clients' amounts to which she was not entitled.

---

[2] The check was written on June 15th and posted on June 17th 2002.

"There seems to be no dispute that once Ms. Clark filed her complaint, the Respondent paid the outstanding medical bills (T. 64, line 20–22). The Respondent also testified that, since the complaint was filed, she has taken remedial action to correct her errors. She still has a private practice with a few cases pending. However, she has taken steps to have other counsel step in to represent her clients should the results of this proceeding prevent her from doing so (T. pgs. 65–66).

"Petitioner alleges, and the Court finds as fact, that the Respondent willfully and knowingly misappropriated and used for her own business and/or personal use, the funds of her clients (¶ 14).

## CONCLUSIONS OF LAW

"The Petitioner alleged that the Respondent committed professional misconduct in violation of Maryland Rule 16–701(I), as delineated in the complaint of Mary Emma Clark. Pursuant to the facts of said complaint, and the findings of fact laid forth above, this Court finds that Respondent did commit Professional Misconduct in violation of Maryland Rule 16–701(I). Furthermore, Petitioner represents and charges that, by her actions and omissions as set forth above, the Respondent unethically and unprofessionally violated certain Rules of Professional Conduct.

"1. **The Petitioner alleges that the Respondent violated Rule 1.1**—Competence, which states "a lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thorough-

ness and preparation reasonably necessary for the representation." The comment to that rule suggests that the court consider: "whether a lawyer employs the requisite knowledge and skill in a particular matter, relevant factors including the relative complexity and specialized nature of the matter, the lawyer's general experience, the lawyer's training and experience in the field in question." The basis for the Petitioner's allegations is that the Respondent intentionally converted client funds to her own use. There is no suggestion or evidence that the Respondent did not handle the subject matter of the action, an automobile tort, with lawyerly skill and ability. **This Court finds that the Respondent did not violate Rule 1.1.**

"2. **The Petitioner alleges that the Respondent violated Rule 1.3**—Diligence, which states: "A lawyer shall act with reasonable diligence and promptness in representing a client." Among other things, a "lawyer should act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf." Ms. Clark directed the Respondent to refrain from paying some of the medical providers. She alleged that some of the medical providers may have been compensated by other insurance and directed the Respondent not to pay those providers. The circumstance, which spawned Ms. Clark's complaint, was the Respondent's failure to pay medical expenses for which Ms. Clark was receiving delinquency notices. "Ms. Clark was getting stressed about the fact that letters were coming to her from collection agencies for unpaid bills." (Petitioner's sub-exhibit 5, Respondent's October 15, 2002 letter to Bar Counsel, pg. 2, 2nd paragraph). It is clear from the reasonable inferences which can be drawn from the evidence in this case, that prior to Ms. Clark's complaint to Bar Counsel, there were insufficient funds in the Respondent's escrow account from the Clark case to satisfy outstanding claims for reimbursement by certain medical providers. On one hand, the Respondent was complying with her client's wishes in not surrendering payment to certain medical providers. However, if on or about October 1, 2002,

Ms. Clark had directed the Respondent to pay the outstanding medical providers, the Respondent would have been unable to do so because she had converted to her own use funds which should have been held in trust from the Clark case. **This Court finds by clear and convincing evidence that the Respondent did violate Rule 1.3.**

"3. **The Petitioner alleges that the Respondent violated Rule 1.4**—Communication, which states:

(a) a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

"The Respondent kept Ms. Clark well informed concerning the subject matter of the case. The Respondent filed for PIP benefits in the matter, communicated with Ms. Clark about the settlement offer and prepared and executed settlement sheets (Petitioner's sub-exhibit 1–3), which her clients signed. There is nothing in the evidence to suggest that the Respondent did not keep her clients informed about the status of their cases or did not provide them with the necessary information to make informed decisions about the subject matter of the cases. **This Court finds that the Respondent did not violate Rule 1.4.**

"4. **The Petitioner alleges that the Respondent violated Rule 1.5**—Fees, which states that:

(a) a lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client of by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

"The Respondent knowingly violated this rule by taking for herself a fee greater than that which she had agreed upon. The Respondent agreed to accept 33.3% of the settlement proceeds. The settlement totaled $11,000.00. The Respondent was entitled to a fee of three thousand, six hundred and sixty-three dollars ($3,663.00) (Petitioner's sub-exhibit 1–3, personal injury settlement sheets). The Respondent received and deposited the $11,000.00 settlement check on May 15, 2002. Prior to that deposit, there was only $41.73 in the Respondent's escrow account. From that account the Respondent wrote the following checks:

| Date Written | Check # | Payee-description | Amount | Balance from settlement check |
|---|---|---|---|---|
| 5-12-02 | 235 | Respondent-reimbursement | $ 150.00 | $10,891.73 |
| 5-18-02 | 233 | Ms. Clark-Rashaad Kelly | $1,934.30 | $ 8,957.43 |
| 5-18-02 | 234 | Ms. Clark-Ebony Kelly | $1,934.30 | $ 7,023.13 |
| 5-18-02 | 232 | Mary Clark | $3,468.40 | $ 3,554.73 |
| 5-18-02 | 236 | Ada Cherry-Mahoi | $2,000.00 | $ 1,554.73 |
| 5-20-02 | 238 | Ada Cherry-Mahoi | $ 975.00 | $ 579.73 |
| 5-28-02 | 239 | Ada Cherry-Mahoi | $ 500.00 | $ 79.73 |

By May 18, 2002, the parties in the Clark case had been fully compensated from the settlement proceeds. On the memo line of checks 236 and 238 made payable to the Respondent, she wrote "Comp–P.I." On May 28, 2002 the Respondent wrote herself a check (# 239) for fees in the amount of $500.00. On the memo line of that check she

wrote "P.I. Comp." At that time, the Respondent had only $188.00 remaining in fees left to be withdrawn for her work on the Clark case. Thereafter the Respondent received PIP checks from GEICO.

| Date Received | Total PIP received for: | Amount | Account Balance |
|---|---|---|---|
| 5-24-02 | Rashaad Kelly | $1,086.75 | $1,666.48 |
| 5-24-02 | Mary Clark | $1,621.00 | $3,287.48 |
| 5-24-02 | Ebony Kelly | $1,312.00 | $4,599.48 |

"On May 28, 2002, the Respondent wrote a check (# 240) payable to herself for three hundred dollars ($300.00) which at that point represented one hundred and twelve dollars ($112.00) more than she was entitled to take. Two days later on May 30, 2002, the Respondent wrote check 241 payable to herself for three hundred dollars ($300.00). The next day, May 31, 2002, she wrote herself a one thousand dollars ($1,000.00) check (# 242). Check numbers 240 through and including 242 had no notations on the memo line. At that time the only funds in the Respondent's escrow account, other than $41.73, were from the Clark case. Within two weeks of receiving the eleven thousand dollar ($11,000.00) settlement check, and within one week of receiving the first PIP payments, the Respondent had withdrawn five thousand seventy-five dollars ($5,075.00) which was fourteen hundred and twelve dollars ($1,412.00) more than she was entitled. By June 3, 2002, two and one half weeks after receiving the settlement check, the account balance for the Clark case, which was the only escrow account the Respondent was managing, was two thousand, six hundred and sixteen dollars and eighty-three cents ($2,616.83). The Respondent continued to withdraw funds from her escrow account in which there were no deposits other than from the Clark case.

| Date Written | Check # | Payee—description | Amount | Clark Balance |
|---|---|---|---|---|
| 5-31-02 | 242 | Ada Cherry-Mahoi | $1,000.00 | $3,575.10 |

| | | | | |
|---|---|---|---|---|
| 6-4-02 | 243 | Ada Cherry-Mahoi | $ 250.00 | $2,366.83 |
| 6-12-02 | 244 | Ada Cherry-Mahoi | $ 350.00 | $2,016.83 |
| 6-15-02 | 246 | Cash | $ 400.00 | $1,616.81 |
| 6-20-02 | 247 | Ada Cherry-Mahoi | $ 200.00 | $1,416.81 |
| 6-26-02 | 248 | Ada Cherry-Mahoi | $ 200.00 | $1,316.81 |
| 7-2-02 | 249 | Ada Cherry-Mahoi | $ 500.00 | $ 816.81 |
| 7-2-02 | 250 | Affiliated Premium Finance | $ 210.08 | $ 606.73 |

"Between the time the settlement check and PIP payments were deposited, and when Respondent eventually paid the medical providers, she withdrew and paid herself a total of six thousand, six hundred and twenty-five dollars ($6,625.00) which was two thousand, nine hundred and sixty-two dollars ($2,962.00) more than to which she was entitled. Because the Respondent took more fees than she had agreed upon, and by failing to inform her clients' of her withdrawal of those additional fees, **the Court finds by clear and convincing evidence that, the Respondent did violate Rule 1.5.**

"5.   **The Petitioner alleges that the Respondent violated Rule 1.15**—the Safekeeping of Property, states that:

(a) A lawyer shall hold property of clients or third personal that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded.   Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person.   Except as stated in this Rule or otherwise permitted by law or agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property

that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

"When holding property for a client, including money, a lawyer acts as a fiduciary. Money must be placed in an appropriate trust account or accounts if more than one account is warranted. The Respondent claimed that she did not know that it was improper to commingle fees with her escrow account, nevertheless she did commingle funds.

"The evidence is that, on or about October 10, 2002, the Respondent received, from her mother Bernice Cherry, a fee of $4,000.00, in the form of a money order. The Respondent deposited that amount into her trust account, thereby commingling it with the funds from the Clark case. At that time, the Clark funds in the trust account had been depleted to approximately two hundred and twenty-five dollars ($225.00).

"On July 9, 2002, the Respondent deposited sixty-one hundred dollars ($6,100.00) into her escrow account. That sum was for the settlement of a personal injury case she handled for her husband Kenneth Mahoi (T. 35, lines 12–24).

"Petitioner: did you have a fee with your husband?

"Respondent: Well, because it was my husband, what he had said was we would use the money to pay necessary expenses. It wasn't as if I said I will charge your thirty-three percent and a third. It was whatever we recover.

"Petitioner: But you did the work?

"Respondent: Yes I did the work.

"Petitioner: So any fee associated with that would be within the sixty-one hundred, is that right?

"Respondent: Right.

"The sequencing of the checks written after receiving the Kenneth Mahoi settlement is as follows:

| Date posted | Check # | Payee-description | Amount | Kenneth Mahoi Settlement Balance |
|---|---|---|---|---|
| | | Settlement check deposited 7-9-02 | | $6,100 |

| | | | | |
|---|---|---|---|---|
| 7-9-02 | 252 | EZ Storage | $ 98.00 | $6,002 |
| 7-9-02 | 253 | Ada Cherry-Mahoi | $ 200.00 | $5,802 |
| 7-11-02 | 254 | Ada Cherry-Mahoi | $2,200.00 | $3,602 |
| 7-11-02 | 255 | Ada Cherry-Mahoi | $1,900.00 | $1,702 |
| 7-15-02 | 256 | Kenneth Mahoi | $ 800.00 | $ 902 |
| 7-22-02 | 257 | Ada Cherry-Mahoi | $ 600.00 | $ 302 |
| 7-23-02 | 258 | Ada Cherry-Mahoi | $ 300.00 | $ 2 |

"The Respondent testified that the recovery from the Kenneth Mahoi personal injury case was income to the Respondent and her husband "*we* [emphasis added] would use the money to pay necessary expenses." Because those funds were personal funds, they should not have been commingled with other funds in the escrow account. The funds related to the Clark case, should have been kept in a *properly labeled* attorney trust account, and not commingled with any personal funds belonging to the Respondent. The Respondent failed to keep funds in a separate account pursuant to Title 16, Chapter 600 of the Maryland Rules. **The Court finds by clear and convincing evidence that the Respondent did violate Rule 1.15.**

"Subsection (b) of **Rule 1.15** requires a lawyer to promptly deliver to a party or third person, any funds that the client or third person is entitled to receive. The Respondent testified that after receiving the PIP checks in May of 2002, Ms. Clark directed her to withhold paying certain medical expenses because those expenses may have been covered by other health insurance policies (T. 31, lines 7–20). The total PIP benefits received in the Clark case were $4,137.10. By the end of September, 2002, the Respondent had taken $2,962.00 more than she was entitled to from the Clark case. In the beginning of October, 2002, when the outstanding medical providers needed to be paid, there were insufficient funds from the Clark trust account to satisfy those bills. It was at that time that the Respondent's mother paid a fee for some undisclosed type of legal work previously completed. It is more than a little suspicious that the alleged fee of four thousand dollars ($4,000.00) was

infused into the Respondent's trust account at a time she needed to pay three thousand, one hundred and eighty-nine dollars and thirty-five cents ($3,189.35) in outstanding medical bills (T.36, lines 14–17). The Respondent does not deny that but for the money order from her mother, she would have had insufficient funds in the trust account to pay the outstanding medical expenses (T. 16, lines 9–13). Because the Respondent had depleted the funds from the Clark case, which should have been held in trust, she was unable to pay the medical bills when Ms. Clark requested her to do so. Because the Respondent was unable to promptly deliver to the medical providers that to which they were entitled, **the Court finds by clear and convincing evidence that the Respondent did violate Rule 1.15.**

"6. **The Petitioner alleges that the Respondent violated Rule 1.16**—Declining or Terminating Representation, which states, in relevant part:

c) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

"The Respondent did not protect her client's interest when she converted funds from the Clark case to her own use. **Therefore, the Court finds by clear and convincing evidence that the Respondent did violate Rule 1.16.**

"7. **The Petitioner alleges that the Respondent violated Rule 8.1**—Bar Admission and Disciplinary Matters, which states:

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not: (a) knowingly make a false statement of material fact.

"In her answer to the Petition for Disciplinary or Remedial Action, the Respondent denies labeling her trust account as an "IOLTA" account (¶ 6). At the hearing, the Respondent did not dispute that her trust account was labeled "IOLTA." She relied on bank personnel to properly title the account (T.43). Having been made aware of her error, the Respondent has closed her IOLTA account and re-opened an account that is properly titled attorney escrow account (T.66, 17 lines 10–11). The Court finds that the Respondent was woefully uninformed about properly establishing and labeling an attorney trust account, but does not believe that she intentionally made a false statement when she initially denied mislabeling her escrow account. The Respondent denies that she failed to maintain funds in trust for the payment of medical providers prior to the payment of those providers (¶ 11). She denies taking a greater fee than that to which she was entitled (¶ 12) and she denies willfully misappropriating funds (¶ 14). She also claims that she was unaware that it was improper to commingle fees with trust account funds.

"There was only forty-one dollars and thirty seven cents ($41.37) in her trust account at the time the Respondent deposited the funds from the Clark case into that account. The Respondent's fee for her services in the Clark case was three thousand, six hundred and sixty three dollars ($3,663.00). The only funds deposited in her escrow account up to June 20, 2002 [3] were derived from the Clark case. As of that date there was no other source of funds in her trust account other than from the Clark case. By June 20, 2002, she had withdrawn and made payable to herself a total of five thousand, four hundred and fifty dollars ($5,450.00) which was one thousand seven hundred and eighty-seven dollars ($1,787) more than the fee she agreed upon.

---

[3] On June 20, 2002 the Respondent deposited one hundred dollars ($100.00) small estate bond for Dexter Caruth.

"On that day, had Ms. Clark directed the Respondent to pay the outstanding medical providers there would have been insufficient funds to do so. The Respondent admitted

that she was winding down her civil practice and testified that she was not reconciling her trust account (T. 46, lines 24–25 and T. 48, lines 5–10). During the months of May and June 2002, with the exception of one hundred dollars ($100.00, see footnote 3), the Clark case was the only source of funds in the Respondent's trust account. Handling the funds in the Respondent's trust account from the Clark case was not complicated. The Clark case was the single and sole contributor to the Respondent's trust account. Yet, in a little over a month, May 15, 2002 to June 20, 2002 the Respondent had taken from the Clark trust account more money than to which she was entitled. The Court finds that the Respondent intentionally converted funds in excess of her fee to her personal use. Having done so, there were insufficient funds in the trust account to satisfy outstanding medical expenses.

"In her answers to the Petition for Disciplinary or Remedial Action, the Respondent denies paying medical providers with funds she received from a person or persons not associated with the Clark case. After receiving a complaint from the Petitioner, on October 10, 2002, the Respondent deposits a four thousand dollar ($4,000.00) money order into her trust account. The Respondent testified that the money order was from her mother as a fee for doing "some legal work ... on behalf of my nephew, her grandson" (T. 34, lines 6–8). There is no doubt that, but for that contribution there would have been insufficient funds in the trust account to pay the outstanding medical expenses, related to the Clark case (T. 16, lines 9–13). It is more than mere coincidence that the alleged four thousand dollar ($4,000.00) fee paid my the Respondent's mother was infused into the trust account at a time when the Respondent needed to pay and subsequently did pay $3,189.35 in outstanding medical bills (T. 36, lines 14–17). The Respondent does not deny that, but for the deposit received from her mother, she would have had insufficient funds in the trust account to pay the outstanding Clark medical expenses (T. 16, lines 9–13). The Court finds that the Respondent intentionally obtained

and used the contribution from her mother to pay for the delinquent medical expenses, which could not be satisfied from the trust account because the Respondent had converted those funds to her own use. The Court finds that the Respondent knowingly and intentionally paid medical providers with her personal funds. The Court further finds that Respondent denied doing so and as such, that constituted an intentional misrepresentation of material fact in connection with a disciplinary matter and therefore **the Court finds by clear and convincing evidence that the Respondent violated Rule 8.1.**

"8. **The Petitioner alleges that the Respondent violated Rule 8.4**—Misconduct, which states, in relevant part:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice.

"By finding that Respondent's actions were intentional, the Court necessarily finds that she violated Rule 8.4, relating to Professional Misconduct. The testimony in the case revealed that Respondent knew what fees were owed to her as a result of the Clark case; she knew how much money she withdrew over the period of time prior to paying the medical bills, and she knew that, when the time came to pay them, that there were insufficient funds in her attorney trust account to do so. At that time, Respondent inappropriately deposited personal funds, not client trust funds, into her attorney trust account, for the purpose of covering the deficit and paying off the outstanding medical bills on behalf of Ms. Clark. Based on the above evidence and findings of

fact, **this Court finds by clear and convincing evidence that the Respondent violated Rule 8.4.**

"9. **The Petitioner alleges that the Respondent violated Maryland Rule 16–606**—Name and Designation of the Account, which states:

An attorney or law firm shall maintain each attorney trust account with a title that includes the name of the attorney or law firm and that clearly designates the account as "Attorney Trust Account," "Attorney Escrow Account," or "Client's Funds Account" on all checks and deposit slips. The title shall distinguish the account from any other fiduciary account that the attorney or law firm may maintain and from any personal or business account of the attorney or law firm.

"Respondent titled her attorney trust account as an IOLTA account. While she denies any intentional wrongdoing, the Court finds that the responsibility to properly designate the account, in accordance with this Rule, lay solely with Respondent. Therefore, by failing to designate the account as "Attorney Trust Account," "Attorney Escrow Account," or "Client's Funds Account," **the Court finds by clear and convincing evidence that the Respondent Violated Maryland Rule 16–606.**

"10. **The Petitioner alleges that the Respondent violated Maryland Rule 16–609**—Prohibited Transactions, which states:

An attorney or law firm may not borrow or pledge any funds required by these Rules to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose. An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer.

"As explained in the above findings of fact, Respondent acted in violation of this rule by withdrawing funds greater than the amount of the fee owed to her. Not only did the Respondent mislabel her Attorney Trust account, she took

money from that account and misappropriated it for her own personal use. On June 17, 2002, the Respondent wrote and endorsed a check for cash (Petitioner's exhibit 1, sub-exhibit 8, page 14) (T. 7, line 25; page 18, lines 1–4). Her clients did not authorize the Respondent's personal use of funds in excess of her fees, and writing a check for cash was also improper. For the reasons stated herein, **the Court finds by clear and convincing evidence that the Respondent violated Maryland Rule 16–609.**

"11. **The Petitioner alleges that the Respondent violated § 10–306** by misusing trust money. Business Occupations and Professions Article, Maryland Code, states:

A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer.

"Upon consideration of the findings of facts stated herein, the Court finds by clear and convincing evidence that the Respondent intentionally converted to her own use money entrusted to her as an attorney in violation of § 10–306 of the Business Occupations and Professions Article."

## STANDARD OF REVIEW

In proceedings involving attorney discipline, this Court has original and complete jurisdiction and conducts an independent review of the record. *Attorney Grievance Comm'n v. Zuckerman,* 386 Md. 341, 363, 872 A.2d 693, 706 (2005); *Attorney Grievance Comm'n v. James,* 385 Md. 637, 654, 870 A.2d 229, 239 (2005); *Attorney Grievance Comm'n v. O'Toole,* 379 Md. 595, 604, 843 A.2d 50, 55 (2004). In our review of the record, the hearing judge's findings of fact generally will be accepted unless they are clearly erroneous. *Attorney Grievance Comm'n v. Gore,* 380 Md. 455, 468, 845 A.2d 1204, 1211 (2004); *Attorney Grievance Comm'n v. Potter,* 380 Md. 128, 151, 844 A.2d 367, 380–381 (2004). As to the hearing judge's conclusions of law, such as whether provisions of the MRPC were violated, "our consideration is essentially

*de novo.*" *Attorney Grievance Comm'n v. McLaughlin,* 372 Md. 467, 493, 813 A.2d 1145, 1160 (2002).

## DISCUSSION

The hearing judge found violations of MRPC 1.3, 1.5, 1.15(a) and (b), 1.16(d), 8.1, 8.4, Maryland Rules 16–606 and 16–609, and Section 10–306 of the Business Occupations and Professions Article and did not find violations of MRPC 1.1 and 1.4, as alleged by Bar Counsel.[15] Both Petitioner and Respondent took exceptions to the hearing judge's findings, each of which we shall address.

A. *Petitioner's Exceptions to Findings of Fact and Conclusions of Law*

■ Bar Counsel in its Petition charged Respondent with a violation of Rule 8.1 for answering the complaint of Ms. Clark "with correspondence which contained statements that were misleading and/or false" by indicating in her correspondence that,

> she had mailed payments on behalf of her clients to the medical providers, ostensibly with checks drawn from escrow, which she should have maintained to make those payments. The Respondent failed to advise that the payments were made only after an infusion of funds into her [trust] account from another independent source.

The hearing judge, however, determined that Rule 8.1 had been violated based upon the Respondent's Answer to the Petition for Disciplinary or Remedial Action filed in this Court. Bar Counsel has excepted to this finding, because no allegation was made, nor could be made, in the Petition that Respondent's Answer to that Petition was misleading. We sustain this exception. *See Attorney Grievance Comm'n v. Seiden,* 373 Md. 409, 419, 818 A.2d 1108, 1114 (2003) (sustain-

---

**15.** We shall not discuss the hearing judge's findings with respect to Rules 1.1 and 1.4 because the judge found no violations of these Rules, to which Bar Counsel did not take exception. *See Attorney Grievance Comm'n v. Harris,* 371 Md. 510, 517 n. 6, 810 A.2d 457, 462 n. 6 (2002).

ing Bar Counsel's exception to the hearing judge's findings where Petitioner did not charge the Respondent for violations of the MRPC) (internal citations omitted).

B. *Respondent's Exceptions to Findings of Fact and Conclusions of Law*

■ Respondent takes exception to the hearing judge's finding that she knowingly and willfully misappropriated funds held in her trust account by alleging that she "was [mistakenly] under the belief that any money remaining in the account would have been [her] fees" and that she mismanaged the account, rather than purposefully misappropriated funds. The hearing judge found to the contrary and concluded that, "the Respondent knew that she was misappropriating funds that were held in her trust account."

The evidence adduced during the hearing clearly and convincingly established that the Respondent received a settlement check and personal injury protection (PIP) payments for the Clark case, the proceeds of which were deposited into her trust account. Respondent testified that, although she knew her fee for the Clark case was 33.3% of the settlement proceeds, which amounted to $3,663.00, she withdrew $2,962.00 beyond the $3,663.00, even though she knew those monies were to be maintained for payment of various medical bills. The bank statements for the account reflect that Respondent wrote a multitude of checks to herself and a check for cash on the escrow account, totaling $6,625.00, between the time the settlement check and PIP payments were deposited and when Respondent paid the medical providers:

| Date Written | Check # | Payee—description | Amount |
|---|---|---|---|
| 5-15-02 | 235 | Ada Cherry-Mahoi-Reimbursement | $ 150.00 |
| 5-18-02 | 236 | Ada Cherry-Mahoi | $2,000.00 |
| 5-20-02 | 238 | Ada Cherry-Mahoi | $ 975.00 |
| 5-28-02 | 239 | Ada Cherry-Mahoi | $ 500.00 |
| 5-28-02 | 240 | Ada Cherry-Mahoi | $ 300.00 |
| 5-30-02 | 241 | Ada Cherry-Mahoi | $ 300.00 |

| | | | |
|---|---|---|---|
| 5-31-02 | 242 | Ada Cherry-Mahoi | $1,000.00 |
| 6-4-02 | 243 | Ada Cherry-Mahoi | $ 250.00 |
| 6-12-02 | 244 | Ada Cherry-Mahoi | $ 350.00 |
| 6-15-02 | 246 | Cash | $ 400.00 |
| 6-20-02 | 247 | Ada Cherry-Mahoi | $ 200.00 |
| 6-26-02 | 248 | Ada Cherry-Mahoi-Reimbursement | $ 200.00 |

Essentially, Respondent withdrew nearly double the agreed upon fee that she was entitled to receive, when funds should have been maintained in the trust account to pay the medical providers, and used personal funds to pay the outstanding bills only after Ms. Clark filed a complaint with Bar Counsel. Respondent also has admitted that the checks made payable to her from the account "were used for . . . business and personal purposes." We, therefore, conclude that the hearing judge's findings that the Respondent knowingly and willfully misappropriated entrusted funds are supported by clear and convincing evidence and overrule Respondent's exception.

C. *Conclusions of Law*

█ The hearing judge determined that Respondent acted in violation of MRPC 1.15(a) when she deposited personal funds into her trust account, thereby commingling her client's funds with her own.

MRPC 1.15(a) states:

A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

On July 9, 2002, the Respondent deposited $6,100.00 into her trust account, which was for the settlement of a personal injury case that she had handled for her husband. During the

hearing, the Respondent testified that the recovery from the case was income to her and her husband and that they "would use the money to pay necessary expenses." Subsequently, on October 10, 2002, the Respondent received a "fee" of $4,000 from her mother for legal services performed on a matter unrelated to the Clark case, which she then deposited into her trust account. On both occasions, Respondent commingled personal funds with monies from the Clark case, which were in the only trust account being maintained by the Respondent. As such, she failed to keep her personal funds in a separate account from her trust account in violation of MRPC 1.15(a). *See Zuckerman*, 386 Md. at 370–71, 872 A.2d at 711–12.

■ The hearing judge also concluded that the Respondent violated MRPC 1.15(b) and 1.3 in her handling of the Clark matter when she failed to promptly pay medical providers. Respondent claims that Ms. Clark had directed Respondent to refrain from paying some of the medical providers because the bills already may have been paid. Nevertheless, as the hearing judge found, there were insufficient funds in Respondent's escrow account to pay the outstanding claims by the medical providers should Ms. Clark have directed Respondent to do so, and that once the bills became due and Ms. Clark began receiving delinquency notices from the medical providers, Respondent failed to promptly pay those outstanding bills. Whether Ms. Clark clearly directed payment of the bills, it is apparent that Respondent could not pay the providers from insufficient funds. We have previously held that an attorney who does not pay a client's debts from settlement funds violates Rule 1.15(b), which states:

> Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

*Zuckerman,* 386 Md. at 369–70, 872 A.2d at 710; *Attorney Grievance Comm'n v. Stolarz,* 379 Md. 387, 399–400, 842 A.2d 42, 49 (2004).

■ In addition, an attorney's failure to pay medical providers demonstrates a lack of diligence in violation of Rule 1.3, which states that a "lawyer shall act with reasonable diligence and promptness in representing a client." *Attorney Grievance Comm'n v. Gallagher,* 371 Md. 673, 710, 810 A.2d 996, 1018 (2002). Because Respondent was unable to promptly pay the medical providers the monies that they were entitled to receive, she violated both Rules 1.15(b) and 1.3.

The same behavior also violates Section 10–306 of the Business Occupations and Professions Article, which provides that "[a] lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer." *Attorney Grievance Comm'n v. Prichard,* 386 Md. 238, 246–47, 872 A.2d 81, 85–86 (2005); *Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 481–82, 671 A.2d 463, 479–80 (1996). We have held that funds withheld by an attorney from the settlement proceeds of a client for payment to third party medical providers constitutes "trust money." *Prichard,* 386 Md. at 246, 872 A.2d at 85.

■ We agree with the hearing judge's conclusion that the Respondent violated MRPC 1.5 requiring a lawyer to charge reasonable fees and MRPC 1.16(d) requiring that a lawyer take reasonable steps to protect a client's interest. The Respondent was entitled to receive $3,663.00 for handling the Clark matter, but withdrew $6,625.00 from her trust account, which at that time solely consisted of Clark's settlement proceeds. Not only did Respondent take substantially more fees than agreed upon, she failed to inform her client of her withdrawal of those additional fees. We have previously held that charging an unreasonable fee and failing to communicate the basis for the fee constitute violations of Rule 1.5, as well as a violation of 1.16(d) by converting client funds and collecting an unearned fee. *See Attorney Grievance Comm'n v. Milliken,* 348 Md. 486, 515, 704 A.2d 1225, 1239 (1998).

The evidence clearly and convincingly establishes that the Respondent also acted in violation of Maryland Rule 16–606 when she named her attorney trust account "IOLTA." Maryland Rule 16–606 states:

An attorney or law firm shall maintain each attorney trust account with a title that includes the name of the attorney or law firm and that clearly designates the account as "Attorney Trust Account", "Attorney Escrow Account", or "Clients' Funds Account" on all checks and deposit slips. The title shall distinguish the account from any other fiduciary account that the attorney or law firm may maintain and from any personal or business account of the attorney or law firm.

Respondent failed to title her attorney trust account in compliance with this Rule. *See Attorney Grievance Comm'n v. Blum,* 373 Md. 275, 299, 818 A.2d 219, 234 (2003); *Attorney Grievance Comm'n v. Bernstein,* 363 Md. 208, 221–22, 768 A.2d 607, 614 (2001).

Maryland Rule 16–609 provides in part that an attorney may not use any funds "required by these Rules to be deposited in an attorney trust account . . . for any unauthorized purpose." We hold that Respondent's knowing and willful misuse of trust money for a purpose other than that for which the trust money was entrusted to her violates Rule 16–609. *See Prichard,* 386 Md. at 246–47, 872 A.2d at 85–86; *Glenn,* 341 Md. at 481–82, 671 A.2d at 479–80. Respondent also violated Rule 16–609 when she wrote a check to cash from her trust account because "[a]n instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer." *Bernstein,* 363 Md. at 223, 768 A.2d at 615.

Finally, Respondent's intentional misappropriation of trust funds violates Rule 8.4, which states in relevant part:

It is unprofessional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

\* \* \*

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice. . . .

Because we have held that Respondent has violated several Rules of Professional Conduct, she necessarily violated Rule 8.4(a) as well, which finds professional misconduct where a lawyer "violates or attempts to violate the Rules of Professional Conduct." *James,* 385 Md. at 663, 870 A.2d at 245; *Gallagher,* 371 Md. at 712, 810 A.2d at 1013.

■■■■ This Court consistently has found an attorney's misappropriation of client funds to violate MRPC 8.4(c). *James,* 385 Md. at 664–65, 870 A.2d at 245; *Gallagher,* 371 Md. at 713, 810 A.2d at 1020; *Attorney Grievance Comm'n v. Snyder,* 368 Md. 242, 793 A.2d 515 (2002); *Attorney Grievance Comm'n v. Vanderlinde,* 364 Md. 376, 381, 773 A.2d 463, 466 (2001); *Attorney Grievance Comm'n v. Sheridan,* 357 Md. 1, 741 A.2d 1143 (1999); *Attorney Grievance Comm'n v. Hollis,* 347 Md. 547, 702 A.2d 223 (1997). In this case, Respondent's conduct was dishonest and deceitful in violation of Rule 8.4(c) in that she willfully and knowingly misappropriated client funds that were to be held in trust.

■■■■ This Court also has found conduct constituting the misappropriation of client or third party funds to be "prejudicial to the administration of justice" in violation of Rule 8.4(d). *See Zuckerman,* 386 Md. at 374–75, 872 A.2d at 713; *James,* 385 Md. at 663, 870 A.2d at 245; *Attorney Grievance Comm'n v. Brown,* 380 Md. 661, 846 A.2d 428 (2004); *Attorney Grievance Comm'n v. Somerville,* 379 Md. 586, 593, 842 A.2d 811, 815 (2004); *Gallagher,* 371 Md. at 713, 810 A.2d at 1020; *Attorney Grievance Comm'n v. Santos,* 370 Md. 77, 803 A.2d 505 (2002); *Attorney Grievance Comm'n v. Powell,* 369 Md. 462, 800 A.2d 782 (2002); *Attorney Grievance Comm'n v. McCoy,* 369 Md. 226, 798 A.2d 1132 (2002); *Snyder,* 368 Md. at 242, 793 A.2d at 515; *Vanderlinde,* 364 Md. at 381, 773 A.2d at 466; *Sheridan,* 357 Md. at 1, 741 A.2d at 1143; *Hollis,* 347 Md. at 547, 702 A.2d at 223. We have recognized that "public

confidence in the legal profession is a critical facet to the proper administration of justice" and conduct that negatively impacts on the public's image or the perception of the courts or the legal profession violates Rule 8.4(d). *Attorney Grievance Comm'n v. Sheinbein,* 372 Md. 224, 252–53 n. 16, 812 A.2d 981, 996 n. 16 (2002), quoting *Attorney Grievance Comm'n v. Richardson,* 350 Md. 354, 368, 712 A.2d 525, 532 (1998). Respondent's misconduct in handling her trust account was harmful to the legal profession because her behavior undermines the public's confidence that attorneys properly will maintain entrusted funds as expected and required under the Rules. As such and consistent with this Court's well-established precedent, we hold that Respondent violated Rule 8.4(d) by engaging in behavior that was prejudicial to the administration of justice.

## SANCTIONS

As this Court recently stated in *Attorney Grievance Comm'n v. Zuckerman,* 386 Md. at 375, 872 A.2d at 713, the appropriate sanction for a violation of the Rules of Professional Conduct depends on the facts and circumstances of each case, including consideration of any mitigating factors. *Attorney Grievance Comm'n v. Awuah,* 374 Md. 505, 526, 823 A.2d 651, 663 (2003); *Attorney Grievance Comm'n v. McClain,* 373 Md. 196, 211, 817 A.2d 218, 227 (2003). Primarily, we seek "to protect the public, to deter other lawyers from engaging in violations of the Maryland Rules of Professional Conduct, and to maintain the integrity of the legal profession." *Awuah,* 374 Md. at 526, 823 A.2d at 663 (quoting *Blum,* 373 Md. at 303, 818 A.2d at 236). To achieve the goal of protecting the public, we impose a sanction that is "commensurate with the nature and gravity of the violations and the intent with which they were committed." *Id.*

Petitioner has recommended a sanction of disbarment, while Respondent represents that she only should be suspended. Although the hearing judge did not find any mitigation, the Respondent offers in support of her recommen-

dation of suspension that she has no prior disciplinary record and that she has fully cooperated with Bar Counsel throughout these proceedings. She also submits that "she was overwhelmed at the time of this incident" and has taken corrective measures by properly labeling her trust account and limiting her private practice.

Respondent has violated MRPC 1.3, 1.5, 1.15(a) and (b), 1.16(d), Maryland Rules 16–606 and 16–609 and Section 10–306 of the Business Occupations and Professions Article, although it is the violation of Rule 8.4, Sections (c) and (d), that compels this Court to agree with Bar Counsel that disbarment is the appropriate sanction. We have often stated that the misappropriation of entrusted funds "is an act infected with deceit and dishonesty, and, in the absence of compelling extenuating circumstances justifying a lesser sanction, will result in disbarment." *James*, 385 Md. at 666, 870 A.2d at 245; *Prichard*, 386 Md. at 238, 872 A.2d at 81; *Attorney Grievance Comm'n v. Sperling*, 380 Md. 180, 191–92, 844 A.2d 397, 404 (2004); *Attorney Grievance Comm'n v. Smith*, 376 Md. 202, 238, 829 A.2d 567, 588–89 (2003); *Attorney Grievance Comm'n v. Spery*, 371 Md. 560, 568, 810 A.2d 487, 491–92 (2002); *Vanderlinde*, 364 Md. at 410, 773 A.2d at 483. Such a sanction is warranted because attorneys

> must remember that the entrustment to them of the money and property of others involves a responsibility of the highest order. They must carefully administer and account for those funds. Appropriating any part of those funds to their own use and benefit without clear authority to do so cannot be tolerated.

*Attorney Grievance Comm'n v. Owrutsky*, 322 Md. 334, 345, 587 A.2d 511, 516 (1991).

The hearing court's findings and conclusions establish that the Respondent acted willfully and intentionally when she depleted the funds that were supposed to be held in trust for her client, which act was dishonest and harmful to the legal profession. In light of these findings, the appropriate sanction for the Respondent's conduct is disbarment.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715(c), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION.*

BELL, C.J., dissents.

Dissenting Opinion by BELL, C.J.

I would impose a period of suspension.