*Attorney Grievance Commission of Maryland v. William Clark Planta*, Misc. Docket AG No. 62, September Term, 2018. Opinion by Battaglia, J.

**ATTORNEY DISCIPLINE – SANCTIONS – DISBARMENT –** Court of Appeals disbarred attorney who severely neglected clients' cases by failing to timely appear, or failing to appear at all, and caused clients to be harmed by missing discovery and filing deadlines, resulting in the imposition of sanctions; misappropriated and mishandled client funds by failing to place fees in client-trust accounts and failing to return unearned fees upon the end of the representation; and demonstrated dishonest conduct by lying to the court about his tardiness at a hearing. Such conduct violated Maryland Attorneys' Rules of Professional Conduct ("MARPC") 1.1 (Competence), 1.2 (Scope of Representation), 1.4 (Communication), 1.5 (Fees), 1.15 (Safekeeping Property), 1.16 (Declining or Terminating Representation), 3.2 (Expediting Litigation), 3.3(a)(1) (Candor Toward the Tribunal), 3.4 (Fairness to Opposing Party and Attorney), 8.1 (Bar Admission and Disciplinary Matters, 8.4(a) (Violating MARPC), 8.4(c) (Dishonesty, Fraud, Deceit or Misrepresentation) and 8.4(d) (Conduct that is Prejudicial to the Administration of Justice).

Circuit Court for Montgomery County
Case No.: 463779-V
Argued: December 5, 2019

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 62

September Term, 2018

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

WILLIAM CLARK PLANTA
_____

Barbera, C.J.,
McDonald,
Watts,
Hotten,
Getty,
Booth
Battaglia, Lynne, A.
   (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Battaglia, J.
_____

Filed:

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

William Clark Planta ("Respondent") was admitted to the Bar of this Court on June 24, 1998. He maintained an office for the practice of law in Montgomery County at all times relevant to this opinion.

The Attorney Grievance Commission of Maryland ("Petitioner") asks us to disbar Respondent for violating certain of the Maryland Attorneys' Rules of Professional Conduct ("MARPC").[1] On February 19, 2019, Petitioner, acting through Bar Counsel, filed against Respondent a Petition for Disciplinary or Remedial Action ("PDRA"), in response to its investigation of the complaints of six of Respondent's former clients, Raymond Boteler, Robert Huber, Darshna Patel, Nicarsia Jackson and Brandon Jackson (collectively "the Jacksons") and LeeAnne Jeffreys. On February 26, 2019, we designated the Honorable Jill Cummins of the Circuit Court for Montgomery County to hear this case.

With respect to Respondent's representation of Mr. Boteler, Petitioner charged Respondent with violating MARPC 1.1 (Competence),[2]

---

[1] On February 15, 2019, Judge Jeannie Cho of the Circuit Court for Montgomery County entered a Temporary Restraining Order against Respondent, precluding him from practicing law in the State of Maryland, which, upon Bar Counsel's motion, had been extended through April 18, 2019. Following a hearing scheduled on June 19, 2019 regarding the Petition for Disciplinary or Remedial Action, at which Respondent did not appear, Judge Jill Cummins of the Circuit Court for Montgomery County entered an Order for Permanent Injunction which precluded Respondent from the practice of law in the State of Maryland pending our review.

[2] MARPC 1.1 provides:

An attorney shall provide competent representation to a client. Competent representation requires legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

1.2 (Scope of Representation),[3] 1.4 (Communication),[4] 1.5 (Fees),[5]

---

[3] MARPC 1.2, in pertinent part, provides:

(a) Subject to sections (c) and (d) of this Rule, an attorney shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. An attorney may take such action on behalf of the client as is impliedly authorized to carry out the representation. An attorney shall abide by a client's decision whether to settle a matter. In a criminal case, the attorney shall abide by the client's decision, after consultation with the attorney, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

[4] MARPC 1.4 provides:

(a) An attorney shall:
(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 19-301(f) (1.0), is required by these Rules;
(2) keep the client reasonably informed about the status of the matter;
(3) promptly comply with reasonable requests for information; and
(4) consult with the client about any relevant limitation on the attorney's conduct when the attorney knows that the client expects assistance not permitted by the Maryland Attorneys' Rules of Professional Conduct or other law.
(b) An attorney shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

[5] MARPC 1.5 provides, in pertinent part:

(a) An attorney shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude any other employment of the attorney;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;

(continued . . .)

1.15(a) (Safekeeping Property),[6]

_____

(continued . . .)

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the attorney or attorneys performing the service; and

(8) whether the fee is fixed or contingent.

[6] MARPC 1.15(a) provides:

An attorney shall hold property of clients or third persons that is in an attorney's possession in connection with a representation separate from the attorney's own property. Funds shall be kept in a separate account maintained pursuant to Title 19, Chapter 400 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the attorney and shall be preserved for a period of at least five years after the date the record was created.

1.16 (Declining or Terminating Representation),[7] 8.1 (Bar Admission and Disciplinary Matters)[8] and 8.4(a), (c) and (d) (Misconduct).[9]   With respect to Respondent's

---

[7] MARPC 1.16, in pertinent part, provides:

(a) Except as stated in section (c) of this Rule, an attorney shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
(1) the representation will result in violation of the Maryland Attorneys' Rules of Professional Conduct or other law;
(2) the attorney's physical or mental condition materially impairs the attorney's ability to represent the client; or
(3) the attorney is discharged.

(d) Upon termination of representation, an attorney shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of another attorney, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred.  The attorney may retain papers relating to the client to the extent permitted by other law.

[8] MARPC 8.1 provides:

An applicant for admission or reinstatement to the bar, or an attorney in connection with a bar admission application or in connection with a disciplinary matter, shall not:
(a) knowingly make a false statement of material fact; or
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 19-301.6 (1.6).

[9] MARPC 8.4 provides, in part:

It is professional misconduct for an attorney to:
(a) violate or attempt to violate the Maryland Attorneys' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so

(continued . . .)

representation of Mr. Huber, Petitioner charged Respondent with violating MARPC 1.1, 1.2, 1.5, 1.16, 8.1 and 8.4(a), (c) and (d).  With respect to Respondent's representation of Ms. Patel, Petitioner charged Respondent with violating MAPRC 1.1, 1.2, 1.4, 1.5, 1.15(a), 1.16, 3.2 (Expediting Litigation),[10] 3.4 (Fairness to Opposing Party and Attorney),[11] 8.1 and 8.4(a), (c) and (d).  With respect to Respondent's representation of the Jacksons, Petitioner charged Respondent with violating MARPC 1.1, 1.2, 1.4, 1.5, 1.15(a), 1.16, 8.1 and 8.4(a), (c) and (d).  With respect to Respondent's representation of Ms. Jeffreys, Petitioner charged Respondent with violating MARPC 1.1, 1.2, 1.4, 1.16, 3.2, 3.3(a)(1) (Candor Toward the Tribunal),[12] 3.4, 8.1 and 8.4(a), (c) and (d).

---

(continued . . .)
through the acts of another;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice[.]

[10] MARPC 3.2 provides:

An attorney shall make reasonable efforts to expedite litigation consistent with the interests of the client.

[11] MARPC 3.4, in part, provides:

An attorney shall not:
(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists[.]

[12] MARPC 3.3, in pertinent part, provides:

(a) An attorney shall not knowingly:
(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the attorney[.]

5

Respondent was served with the Petition for Disciplinary or Remedial Action, our Order and the Writ of Summons on March 7, 2019. On March 15, 2019, Bar Counsel propounded on Respondent interrogatories, requests for documents and admission of facts as well as genuineness of documents. Having received no response from Respondent, on April 30, 2019, upon request of Bar Counsel, the circuit court entered an Order of Default. Notice of the default was mailed to Respondent; Respondent did not file a motion to set aside the order of default or otherwise communicate with the court. The circuit court then granted Bar Counsel's Motion for Sanctions by order entered on June 3, 2019, which resulted in the Petition's averments being admitted and precluded Respondent from presenting any witnesses or documents at a hearing on the disciplinary matter. A hearing took place on June 19, 2019, at which Respondent did not appear, resulting in the circuit court admitting Petitioner's exhibits.

On August 23, 2019, Judge Cummins entered her Findings of Fact and Conclusions of Law, to which neither party filed exceptions. Respondent failed also to offer any proposal of a sanction, unlike Bar Counsel who recommended disbarment; Respondent also failed to avail himself of the opportunity to appear and argue before us.

We disbarred Respondent in a per curiam order issued December 6, 2019. *Attorney Grievance Comm'n v. Planta*, 466 Md. 434 (2019). In this opinion, we explain that decision.

In our review of the record, we accept the hearing judge's findings of fact unless shown to be clearly erroneous. *Attorney Grievance Comm'n v. Hodes*, 441 Md. 136, 168–69, 105 A.3d 533, 552 (2014). "Under our independent review of the record, we must

6

determine whether the findings of the hearing judge are based on clear and convincing evidence."[13]  *Id.* (quoting *Attorney Grievance Comm'n v. Mooney*, 359 Md. 56, 73, 753 A.2d 17, 26 (2000)).  "A hearing judge's factual finding is not clearly erroneous if there is any competent evidence to support it."  *Id.* at 169, 105 A.3d at 552 (quoting *Attorney Grievance Comm'n v. McDonald*, 437 Md. 1, 16, 85 A.3d 117, 125 (2014)).

## FINDINGS OF FACT

Judge Cummins accepted Petitioner's exhibits, which included complaints from Respondent's former clients, motions filed in the underlying cases and attempted communications with Respondent, among others, and based her Findings of Fact and Conclusions of Law upon the Petition and those exhibits.  We frame the hearing judge's findings of fact according to each client.

---

[13] In *Attorney Grievance Comm'n v. Mooney*, 359 Md. 56, 753 A.2d 17 (2000), we explained the clear and convincing evidence standard as follows:

> The requirement of "clear and convincing" or "satisfactory" evidence does not call for "unanswerable" or "conclusive" evidence.  The quality of proof, to be clear and convincing, has also been said to be somewhere between the rule in ordinary civil cases and the requirement of criminal procedure—that is, it must be more than a mere preponderance but not beyond a reasonable doubt.  It has also been said that the term "clear and convincing" evidence means that the witnesses to a fact must be found to be credible, and that the facts to which they have testified are distinctly remembered and the details thereof narrated exactly and in due order, so as to enable the trier of the facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.  Whether evidence is clear and convincing requires weighing, comparing, testing, and judging its worth when considered in connection with all the facts and circumstances in evidence.

*Id.* at 79, 753 A.2d at 29.

*Raymond Boteler*

Mr. Boteler had previously represented himself in a custody, visitation and child support case against his former wife, Isabelle Chahpoori, in the Circuit Court for Montgomery County. After having received an adverse ruling, resulting in his having to pay Ms. Chahpoori attorneys' fees in the amount of $10,000.00, Mr. Boteler retained Respondent and Respondent's law partner, Wanda Martinez, to represent him in an in banc review of that adverse decision.[14] Under the agreement, Respondent's hourly rate was $375.00 and Mr. Boteler was to pay an $8,000.00 retainer.

Before the hearing took place, as Judge Cummins found, Respondent had "negotiated a partial resolution" with Ms. Chahpoori's attorney regarding child support but failed to review the proposed order before submitting it to the court. Following the in banc hearing, the panel reversed the award of attorneys' fees and remanded the matter back to the Honorable Ronald Rubin of the Circuit Court for Montgomery County.

Respondent failed to timely appear for the hearing on remand which had been scheduled for 9:30 a.m. on January 17, 2018. Judge Rubin ordered Respondent to appear at 2:00 p.m. Mr. Boteler then traveled to Respondent's office, but Respondent did not

---

[14] Rule 2-551(a), the rule which permits in banc reviews, provides:

> When review by a court in banc is permitted by the Maryland Constitution, a party may have a judgment or determination of any point or question reviewed by a court in banc by filing a notice for in banc review. Issues are reserved for in banc review by making an objection in the manner set forth in Rules 2-517 and 2-520. Upon the filing of the notice, the Circuit Administrative Judge shall designate three judges of the circuit, other than the judge who tried the action, to sit in banc.

arrive until 1:00 p.m., after Mr. Boteler had already left to return to the circuit court. At approximately 2:00 p.m., Respondent and Mr. Boteler did appear before Judge Rubin, but Mr. Boteler had to leave to pick up his son. Judge Rubin, after hearing arguments, ordered Mr. Boteler to again pay Ms. Chahpoori $10,000.00 in attorneys' fees; Respondent failed to communicate the order to Mr. Boteler.

Mr. Boteler called Respondent numerous times in the week following the hearing to inquire about its outcome, but never received a response. About nine days after the hearing, Respondent contacted Mr. Boteler to inform him of the outcome, stating that he would file an appeal after the order was entered. Over the course of the next few weeks, Respondent again failed to respond to Mr. Boteler's request for updates. Eventually, after Mr. Boteler had reviewed his case file, he learned that the time by which to file an appeal of Judge Rubin's order had passed.

Mr. Boteler eventually terminated Respondent's representation and retained new counsel. Respondent, however, "failed and refused, despite repeated requests, to return Mr. Boteler's file" including a copy of a hearing transcript paid for by Mr. Boteler, even though Mr. Boteler had paid Respondent $11,500.00. Judge Cummins also found that Respondent failed to deposit and maintain those funds in an attorney trust account until they were earned and noted that "Respondent failed to provide any legal services of value to Mr. Boteler and failed to provide any refund to Mr. Boteler."

*Robert Huber*

Mr. Huber contacted Respondent by phone seeking representation in connection with a peace order that had been filed against him by a former domestic partner.

9

Respondent had informed Mr. Huber that he would represent him for a flat fee of $1,500.00 but would enter his appearance on Mr. Huber's behalf for a cash payment of $500.00. On the night before the peace order hearing, Respondent instructed Mr. Huber to meet him outside of his residence in Washington, DC to deliver the $500.00 appearance fee and original documents associated with his case, which Mr. Huber did; Respondent then also instructed Mr. Huber to meet him at his Rockville office the next morning to review the documents and prepare for the hearing.

Mr. Huber and a friend arrived at Respondent's office at 7:00 a.m. the next morning, as instructed, but Respondent did not arrive by the time Mr. Huber walked over to the District Court at around 8:15 a.m. At around 9:40 a.m. that morning, Respondent arrived at the District Court "wearing street clothes and unprepared for the hearing." Judge Cummins also noted that Respondent did not have the case files that Mr. Huber provided the night before. The hearing was set to continue at a later date. Mr. Huber, however, terminated the representation and requested the return of the documents he provided Respondent the night before.

Over two months later, after having filed a complaint with the Attorney Grievance Commission, Mr. Huber received a copy of the charging documents from Respondent. Judge Cummins noted, however, that, as of March 14, 2019, eight months after Respondent's termination, Mr. Huber had not received any of the other documents he provided Respondent nor a refund. She found that "Respondent failed to provide any legal services of value to Mr. Huber and failed to provide Mr. Huber a refund."

*Darshna Patel*

10

In early September of 2017, Ms. Patel had retained Respondent to represent her in a divorce from her husband, Sahill Saxena. Mr. Saxena's attorney, shortly thereafter, served Respondent with discovery requests about which Respondent failed to inform Ms. Patel. About a month later, Respondent filed an answer to the complaint on behalf of Ms. Patel, but failed to file a counter complaint, which, Judge Cummins found deprived "Ms. Patel of the ability to request a monetary award or attorney's fees." Mr. Saxena's attorney reached out to Respondent on a number of occasions inquiring about the discovery requests but never received any response. In November of 2017, the circuit court ordered the parties to file a pretrial statement by March 2, 2018 and a joint marital property statement by February 23, 2018, as well as designate experts by January 19, 2018.

Counsel for Mr. Saxena, in mid-November of 2017, not having received any responses to discovery, filed a Motion to Compel, to which Respondent failed to respond or notify his client. A month later, in December of 2017, the court granted the Motion to Compel and ordered Ms. Patel to respond to discovery within ten days of the order. Respondent, however, once again failed to inform Ms. Patel of the court's order or provide any responses to the discovery requests. In late January of 2019, counsel for Mr. Saxena filed a Motion for Sanctions based upon Respondent's failure to participate in discovery.

Before the deadline to designate experts, as Judge Cummins further noted, Ms. Patel had informed Respondent of the identity of her real estate appraisal expert. Respondent, however, failed to designate any experts by the court's deadline. In late February of 2018, Ms. Patel provided Respondent with the completed real estate appraisal, but he did not provide the appraisal to opposing counsel until April of 2018. In late February of 2018,

11

counsel for Mr. Saxena provided Respondent with a draft joint property statement for Ms. Patel's consideration, which Respondent failed to communicate.

In March of 2018, based upon Respondent's failure to respond to any requests from opposing counsel, the court granted Mr. Saxena's motion for sanctions ordering, in part, that Ms. Patel be prohibited from introducing any evidence not produced during discovery and awarding Mr. Saxena attorneys' fees. Respondent did not explain the significance of the court's award of sanctions to Ms. Patel but did state that he would pay the attorneys' fees awarded to Mr. Saxena.

Nearly four months after the deadline established in the scheduling order and two months after the close of discovery, Respondent attempted to designate an expert witness, and, on the day before the hearing on the merits, he filed Ms. Patel's marital property statement "along with an untimely expert witness designation." On the day of the hearing, Respondent requested a postponement, citing his failure to timely submit pretrial and marital property statements; the court denied the request. The court also precluded some of Ms. Patel's expert witnesses from testifying.

The court granted the divorce and directed that the parties submit post-trial memoranda on the property issues, which Respondent also failed to do. Respondent further failed to respond to Ms. Patel's requests for information about the post-trial memorandum and failed to appear for three meetings he had scheduled with her. In August of 2018, Ms. Patel determined that Respondent had abandoned the representation and retained new counsel, who settled the case by the end of the month. Mr. Saxena's new attorney filed a

12

Motion for Rule 1-341 sanctions against Respondent; Respondent failed to either respond or appear at the hearing regarding the proposed sanctions.

Judge Cummins determined that Ms. Patel paid Respondent $7,000.00 for the representation. He also failed to deposit and maintain her funds in an attorney trust account until earned. Throughout the course of the representations, as Judge Cummins noted, Respondent appeared about thirty minutes late to two separate court-mandated ADR sessions and appeared thirty minutes late to two separate hearings. Judge Cummins also found that he "failed to prepare Ms. Patel for trial and failed to discuss Mr. Saxena's multiple settlement offers with Ms. Patel." Thus, Judge Cummins concluded, "Respondent failed to provide any meaningful services to advance Ms. Patel's interests and failed to provide Ms. Patel with a refund."

*Nicarsia Jackson and Brandon Jackson*

In November of 2017[15] "Mr. Jackson and/or his mother, Ms. Jackson, paid the Respondent a retainer fee in the amount of $7,500" to represent Mr. Jackson in a child custody dispute with his daughter's mother, Ms. Flood. In March of 2018, the Jacksons paid Respondent an additional $1,500.00. Judge Cummins found that Respondent also failed to deposit or maintain the funds he received from the Jacksons in an attorney trust account until he earned them. That same month, Respondent appeared with Mr. Jackson for a settlement/status hearing, where the judge set the matter in for hearing on the merits

---

[15] Judge Cummins stated that the fee was paid in 2018, although the record indicates that it was paid in 2017, which we shall use.

in May of 2018 and directed both parties to file pre-trial statements, which Respondent failed to do.

At the merits hearing in May, Respondent appeared and requested a postponement, which the court denied. After two days of hearings, an additional day was set in July, where the Respondent again appeared and requested a postponement, which the court granted; the court rescheduled the hearing for September of 2018.

In August of 2018, however, Ms. Flood filed a "Motion for Protective Order" against Ms. Jackson, which was eventually transferred to the Circuit Court with a hearing scheduled later that month. Respondent, who had entered his appearance in the matter, failed to appear for the hearing. Judge Cheryl McCally of the Circuit Court for Montgomery County called Respondent's phone and left him a message. Within forty-five minutes, Respondent returned the call stating that he had "been having on and off problems at [his] place with the electricity. It went out again last night, all of it." Judge McCally postponed the matter until September.

Ms. Jackson attempted to communicate with Respondent prior to the protective order hearing but could not reach him. On the day of the hearing, Respondent appeared an hour late and had not discussed the case with Ms. Jackson. Judge Cummins noted that Respondent "was unprepared; he carried an empty briefcase, did not have any documents with him, and asked to borrow a pen and notepad from Ms. Jackson." After hearing the arguments, the judge dismissed Ms. Flood's request for a protective order and instructed the parties to contact chambers that afternoon to receive her decision regarding the custody matter. Afterwards, Ms. Jackson made several attempts to contact Respondent to learn of

14

the judge's custody determination, but he never responded, thus prompting Ms. Jackson to call chambers directly the next day.

The custody matter had been continued again until March of 2019. On January 2, 2019, Ms. Flood's attorney attempted several times to contact Respondent to notify him of her intent to file an Ex Parte Motion for Immediate Custody and Related Relief, which was filed on January 4, 2019. Without Respondent or Mr. Jackson present, the court granted the motion. Judge Cummins concluded that:

> During the pendency of the representation, the Respondent failed to communicate with the Jacksons, failed to appear for scheduled meetings, routinely appeared late for Court, and appeared in court without any files, documents or paper – on several occasions, the Respondent borrowed paper and a pen from Ms. Jackson to take notes during hearings.

Accordingly, she found that Respondent had "failed to provide any substantial services of value to the Jacksons and failed to refund" any of the money they had paid to retain him.

*LeeAnne Jeffreys*

In February of 2017, Ms. Jeffreys retained Respondent to represent her in filing for divorce from her husband in the Circuit Court for Montgomery County. Mr. Jeffreys answered the complaint and filed a counter-complaint. In April of 2017, Mr. Jeffreys' attorney served Respondent with discovery. In the two months that followed, counsel for Mr. Jeffreys contacted Respondent three separate times about receiving responses to the requests for discovery, to which he never replied.

In June of 2017, Mr. Jeffreys' attorney filed a Motion to Compel. Over the course of the next month, Respondent's assistant emailed Ms. Jeffreys, first suggesting that discovery would be completed within thirty days and then asserting that the letters from

15

her husband's attorney regarding discovery responses were "just pestering request[s] for discovery and, therefore, with not much content." The circuit court granted the motion to compel and ordered Ms. Jeffreys to respond to discovery within ten days of the order. More than ten days later, Respondent's assistant emailed Ms. Jeffreys a copy of the order stating, "[o]ur office will work to address this order." A month later, Ms. Jeffreys emailed draft discovery responses to Respondent.

In December of 2017, having still not received responses to the discovery requests, counsel for Mr. Jeffreys filed a Motion for Sanctions. The following day, Respondent's assistant emailed Ms. Jeffreys regarding the motion, stating that the overdue discovery was on her "front burner." In late December, Ms. Jeffreys provided Respondent with additional documents to be included in her discovery responses. He, however, failed to respond to the motion for sanctions, and a hearing was scheduled for March 9, 2018.

Two days before the hearing, Respondent's assistant emailed Ms. Jeffreys again informing her that the discovery dispute was "a waste of time." At the hearing, the parties submitted a consent order whereby the court granted the motion for sanctions and ordered Ms. Jeffreys to pay $500.00 in attorneys' fees and directed her to respond to discovery within fifteen days. Respondent failed to inform Ms. Jeffreys that she had to pay attorneys' fees.

In mid-April 2018, counsel for Mr. Jeffreys wrote Respondent and extended the discovery deadline until April 20, 2018. On April 19, 2018, Respondent's assistant emailed Ms. Jeffreys and misrepresented that discovery requests had been received only the day prior. Respondent then requested an extension, but, as Judge Cummins found, as of April

25, 2018, Respondent had failed to provide any discovery responses, the day on which opposing counsel filed a Renewed Motion for Sanctions. In May of 2018, the court granted Mr. Jeffreys' Renewed Motion for Sanctions, ordered Ms. Jeffreys to pay $822.50 in attorneys' fees and entered a judgment in the amount of $1,000.00 against Ms. Jeffreys. The court also ordered that she be precluded from introducing any evidence at trial not produced during discovery.

A hearing on the merits was held in July of 2018, for which Respondent appeared an hour and a half late. Respondent appeared unprepared, he did not have any files or documents with him and had to borrow a pad and pen from his client. At the hearing on July 16, 2018, Judge Cummins found that "Respondent knowingly and intentionally misrepresented to the [c]ourt that he was late because he had been admitted to the hospital with a stomach virus. The Respondent was not admitted to the hospital with a stomach virus in July 2018." The hearing was continued the next day, when Respondent failed to timely appear again.

*Bar Counsel Investigations*

In response to Mr. Boteler's complaint dated June 11, 2018, Bar Counsel wrote to Respondent and requested that he provide a written response no later than July 5, 2018. On August 16, 2018, Bar Counsel had not yet received a response, prompting her to write

to Respondent again, requesting that he respond by August 29, 2018, and a third time on September 11, 2018, requesting a response by September 24, 2018.[16]

In response to Mr. Huber's complaint dated September 6, 2018, Bar Counsel wrote to Respondent on September 14, 2018, providing him a copy of Mr. Huber's complaint and requested a written response by September 28, 2018.[17]

In October of 2018, having received no response from Respondent, Bar Counsel investigators went to his home. Respondent answered the door and the investigators entered his apartment, wherein he acknowledged having received the previous letters sent by Bar Counsel, stating that he intended to respond to the Boteler and Huber complaints.

On November 30, 2018, Mr. Saxena filed a complaint with Bar Counsel. Bar Counsel, again, wrote to Respondent and requested that he supply a response to the complaint by January 4, 2019. On December 18, 2018, Ms. Patel also filed a complaint, and again, Bar Counsel wrote Respondent regarding the representation. On January 7, 2019, Respondent replied to a Bar Counsel email, stating, "[t]hank you. I am in your debt and I won't forget it. I think we e [sic] meeting at Nordstrom Rack in 15 minutes or so. I'm on my way to get a cab now."

---

[16] The second and third letters Bar Counsel sent Respondent regarding the Boteler matter were sent by first class mail, certified mail and email, and none was returned as undeliverable.

[17] The letter Bar Counsel sent Respondent regarding Mr. Huber's complaint was done so by first class mail, certified mail and email, and none was returned as undeliverable.

On January 17, 2019, having received no response with respect to any of the complaints, Investigators again went to Respondent's home, but he was not present. On January 28, 2019, Respondent returned Bar Counsel's phone calls and arranged to meet with Investigators but failed to appear. Judge Cummins noted that, as of March 15, 2019, Respondent had not responded to any of Bar Counsel's requests for information.

*Alleged Substance Abuse*

Judge Cummins also made findings related to the record that Respondent suffers from substance abuse. We need not address these findings because Respondent, by failing to respond to the Petition filed by Bar Counsel or otherwise participate in discovery, admitted that he "is addicted to crystal methamphetamine." *See Attorney Grievance Comm'n v. Rheinstein*, 466 Md. 648, 223 A.3d 505 (2020).

## DISCUSSION

This Court "has original and complete jurisdiction over attorney discipline proceedings" in Maryland. *Attorney Grievance Comm'n v. Hamilton*, 444 Md. 163, 178, 118 A.3d 958, 966 (2015) (quoting *Attorney Grievance Comm'n v. Harmon*, 433 Md. 612, 623, 72 A.3d 555, 562 (2013)). We generally accept the hearing judge's findings of fact unless they are clearly erroneous. *Id.* (citing *Harmon*, 433 Md. at 623, 72 A.3d at 562). We conduct an independent review of the hearing judge's conclusions of law, pursuant to Rule 19-741(b)(1).[18]

---

[18] Rule 19-741(b)(1) provides:

(continued . . .)

Based on our review of the record, we accept the hearing judge's findings of fact. Further, when no exceptions to the hearing judge's findings are filed, as was the case here, we may treat the hearing judge's findings of fact as established for purposes of our independent review of the judge's conclusions of law. Rule 19-741(b)(2)(A).[19]

For the reasons that follow, we agree with the hearing judge's collective conclusions that Respondent violated MARPC 1.1, 1.2, 1.4, 1.5, 1.15(a), 1.16(a)(2), 1.16(d), 3.2, 3.3(a)(1), 3.4, 8.1 and 8.4(a), (c) and (d).[20]

### Rule 1.1

Rule 1.1 requires that an attorney "provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." An attorney may violate the rule "although he or she has the adequate knowledge or skill to represent a client, if the attorney fails to apply the thoroughness and/or preparation necessary for proper representation." *Hamilton*, 444 Md. at 179, 118 A.3d at 967 (citing *Attorney Grievance Comm'n v. De La Paz*, 418 Md. 534, 553, 16 A.3d 181, 192 (2011)); *see also Attorney Grievance Comm'n v. Costanzo*, 432 Md. 233, 253, 68 A.3d 808, 819 (2013) ("A failure to make the proper and

---

(continued . . .)

    The Court of Appeals shall review de novo the circuit court judge's conclusions of law.

[19] Rule 19-741(b)(2)(A) provides:

    If no exceptions are filed, the Court may treat the findings of fact as established

[20] Respondent did not file any exceptions to the hearing judge's conclusions of law.

20

required filings in a client matter demonstrate a lack of the appropriate preparation and thoroughness necessary to provide competent representation.").

A "[f]ailure to appear in court when expected to do so is a particularly egregious violation of [MARPC] 1.1." *Hamilton*, 444 Md. at 180, 118 A.3d at 967. Such a failure to appear "in court for a client's trial, absent an acceptable explanation, [is] incompetent representation and a violation" of the Rule. *Attorney Grievance Comm'n v. Harris*, 366 Md. 376, 403, 752 A.2d 516, 531 (2001) (internal citation omitted). Competent representation "necessarily includes, at a minimum, the attorney's presence at any court proceedings for which he or she was retained." *Id.* The "failure of an attorney to appear in court is a complete failure of representation and 'the ultimate incompetency.'" *Hamilton*, 444 Md. at 180, 118 A.3d at 967–98 (quoting *Harris*, 366 Md. at 403, 784 A.2d at 531).

### Raymond Boteler

Respondent violated Rule 1.1 in his representation of Mr. Boteler, as Judge Cummins concluded, when he failed to review the partial resolution negotiated with opposing counsel prior to its submission to the court. He also violated the Rule when he failed to appear for the hearing on remand.

### Robert Huber

Respondent violated Rule 1.1 in his representation of Mr. Huber, as Judge Cummins concluded, when he failed to meet with Mr. Huber on the morning of his protective hearing, as promised, and then failed to timely appear for that hearing in the District Court later that morning. When Respondent eventually did appear, he was not prepared.

21

*Darshna Patel*

Respondent violated Rule 1.1 with respect to his representation of Ms. Patel, as Judge Cummins concluded, when he failed to file a counter-complaint in her divorce matter, thereby depriving her right to seek a monetary award or attorneys' fees; repeatedly failed to respond to opposing counsel's discovery requests; failed to respond to the motion to compel or motion for discovery sanctions; failed to timely file a joint property statement, a pretrial statement or expert witness designations; failed to file a post-trial memorandum with respect to the property issue as ordered; and failed to timely appear for ADR and court hearings. He also violated the Rule by failing to discuss with Ms. Patel Mr. Saxena's multiple settlement offers and failing to prepare Ms. Patel for trial.

*The Jacksons*

Respondent violated Rule 1.1 with respect to his representation of the Jacksons, as Judge Cummins concluded, when he failed to appear for the protective order hearing on August 31, 2018, failed to appear for meetings scheduled with the Jacksons and when he failed to respond to their requests for information and opposing counsel's requests to discuss the *ex parte* relief sought. He also violated the Rule when he appeared late to other hearings, in a wholly unprepared state.

*LeeAnne Jeffreys*

Respondent violated Rule 1.1 with respect to his representation of Ms. Jeffreys, as Judge Cummins concluded, when he repeatedly failed to respond to requests for discovery; failed to respond to the motion to compel and both motions for sanctions; failed to appear

22

to a scheduled meeting with Ms. Jeffreys and appeared late and unprepared for court proceedings.

## Rule 1.2

An attorney violates Rule 1.2(a) "if he or she fails to inform a client of the status of his or her case, thereby denying the client the ability to make informed decisions." *Hamilton*, 444 Md. at 182, 118 A.3d at 968. For an attorney to abide by a client's decisions regarding the representation, "the client must be able to make informed decisions as to the objectives of the representation. In order for a client to make informed decisions, an attorney must give the client honest updates regarding the status of his or her case." *Id.* 118 A.3d at 968–69 (quoting *Attorney Grievance Comm'n v. Shapiro*, 441 Md. 367, 380, 108 A.3d 394, 402 (2015)).

We agree with Judge Cummins' conclusion that Respondent violated Rule 1.2 in all of the representations under scrutiny, because he failed to communicate with any of his clients as necessary to carry out the purpose of the representations.

## Rule 1.4

Rule 1.4 requires attorneys to communicate with their clients and keep them reasonably informed of the status of their legal matters. We have sustained Rule 1.4 violations when a client tries repeatedly to contact the attorney, but the attorney fails to provide a response. *Hamilton*, 444 Md. at 185, 118 A.3d at 970. This Rule is violated also when an attorney "fails to communicate crucial information about the status of the case," such as when a case is dismissed. *Id.* (citing *De La Paz*, 418 Md. at 554, 16 A.3d at 193). We have also sustained a Rule 1.4 violation were the attorney fails to comply promptly

23

with a client's reasonable requests for information, which may include a general status update or for documents pertaining to the case. *Id.*

*Raymond Boteler*

Respondent violated Rule 1.4(a) and (b) with respect to his representation of Mr. Boteler, as Judge Cummins concluded, when he failed to timely and accurately advise Mr. Boteler of the remand hearing, despite Mr. Boteler's repeated requests for updates, thereby resulting in Mr. Boteler's inability to note an appeal in the attorneys' fees matter. For nearly three months, Respondent failed to respond to Mr. Boteler's reasonable requests for information, also in violation of Rule 1.4.

*Darshna Patel*

Respondent violated Rule 1.4 with respect to his representation of Ms. Patel, as Judge Cummins concluded, when he repeatedly failed to inform her of opposing counsel's requests for discovery and the associated motions regarding discovery violations as well as their ramifications on her ability to put on a case. Respondent also violated the Rule when, after the trial, he failed to respond to Ms. Patel's "numerous requests for information about the post-trial memorandum that was to be submitted by July 20, 2018." He also never communicated any of the settlement offers made by Mr. Saxena during the pendency of the litigation.

*The Jacksons*

Respondent violated Rule 1.4 with respect to his representation of the Jacksons, as Judge Cummins concluded, when he failed to respond to the Jacksons' requests for

information regarding their cases, failed to attend scheduled meetings with them and failed to prepare them for hearings.

*LeeAnne Jeffreys*

Respondent violated Rule 1.4 with respect to his representation of Ms. Jeffreys, as Judge Cummins concluded, when he failed to attend meetings he scheduled with her and failed to communicate with her about the outstanding discovery issues as well as the significance of the discovery motions filed by opposing counsel and the associated court orders. He also violated the Rule when he consented to the entry of an order of sanctions which resulted in Ms. Jeffreys having to pay attorneys' fees.

Rule 1.5

Rule 1.5 requires an attorney to charge only reasonable fees. "The reasonableness of a fee is not measured solely by examining its value at the outset of the representation; indeed an otherwise-reasonable fee can become unreasonable if the lawyer fails to earn it." *Attorney Grievance Comm'n v. Garrett*, 427 Md. 209, 224, 46 A.3d 1169, 1178 (2012); *see also Hamilton*, 444 Md. at 187, 118 A.3d at 971. In *Garrett*, we held that Garrett had violated Rule 1.5 with regard to his representation of several clients for failure to earn his legal fees as charged, yet keeping them nonetheless. Garrett had failed to further the cases of his clients by not appearing at proceedings, failing to refund any unearned fees and failing to pursue the interests of his clients overall. *See also Attorney Grievance Comm'n v. Conwell*, 462 Md. 437, 200 A.3d 820 (2019); *Attorney Grievance Comm'n v. Patterson*, 421 Md. 708, 28 A.3d 1196 (2011).

*Raymond Boteler*

25

Respondent violated Rule 1.5 with respect to his representation of Mr. Boteler, as concluded by Judge Cummins, as Mr. Boteler ultimately paid Respondent $11,500.00, but Respondent failed to provide any legal services of value. Respondent failed to review the final terms of the partial settlement agreement before its submission and failed to preserve Mr. Boteler's right to appeal the circuit court's attorneys' fees decision. Furthermore, he did not refund any unearned fees to Mr. Boteler upon termination of the representation.

*Robert Huber*

Respondent violated Rule 1.5 with respect to his representation of Mr. Huber, as concluded by Judge Cummins, when, after receiving $500.00, he failed to meet with Mr. Huber before his protective order hearing, failed to appear on-time for the protective order hearing, and, when he did appear, was wholly unprepared. Respondent failed to return the retainer when terminated, despite his complete failure to provide legal services.

*Darshna Patel*

Respondent violated Rule 1.5 with respect to his representation of Ms. Patel, as concluded by Judge Cummins, when he failed to provide any legal services of value despite being paid $7,000.00. Respondent caused Ms. Patel harm by failing to participate in discovery which resulted in sanctions that precluded her from proffering evidence at trial and having to pay Mr. Saxena attorneys' fees.

*The Jacksons*

Respondent violated Rule 1.5 with respect to his representation of the Jacksons, as concluded by Judge Cummins, when he received $9,000.00 from them, yet failed to appear

26

in court or otherwise competently represent them or communicate with them about the matter, resulting in his ultimate termination.

Rule 1.15

Rule 1.15(a) requires attorneys to keep the property of clients separate from the lawyer's own property. When the property is money, "it must be held in a separate account pursuant to" Title 19, Chapter 400 of the Maryland Rules.[21] *Hamilton*, 444 Md. at 188, 118 A.3d at 972 (citing *Attorney Grievance Comm'n v. Stillwell*, 434 Md. 248, 257, 74 A.3d 728, 733 (2013)). "Trust money is money an attorney receives from a client in anticipation of performing future services." *Id.* A retainer "is not earned until all the work associated with the fee is completed." *Id.* at 189, 118 A.3d at 973 (quoting *Attorney Grievance Comm'n v. Zuckerman*, 386 Md. 341, 360, 872 A.2d 693, 704 (2005)). Rule 19-404 requires an attorney to deposit all funds of this nature into an attorney trust account; a violation of Rule 1.15 occurs when the attorney "does not deposit trust funds into an

---

[21] Title 19, Chapter 400 of the Maryland Rules governs trust accounts held by attorneys. Rule 19-401. Rule 19-403 imposes a duty on attorneys to maintain a trust account. Rule 19-404 requires deposits of certain funds into the account. Rule 19-405 requires the attorney to request the financial institution to designate on its records that the account is an attorney trust account and to authorize the financial institution to report to Bar Counsel dishonored instruments or overdrafts on the account. Rule 19-406 places requirements on the name and designation of the account. Rule 19-407 requires the attorney to keep certain records regarding the account. Rule 19-408 prohibits the attorney from depositing non-trust funds into the account and from failing to withdraw earned fees from the account. Rule 19-409 governs interest earned on attorney trust accounts. Rule 19-410 governs other actions attorneys are prohibited to take with respect to trust accounts. Rule 19-411 governs the approval of financial institutions. Rule 19-412 governs the notice of approved institutions.

attorney trust account and does not obtain the client's informed consent to do otherwise." *Id.* at 189–90, 118 A.3d at 973 (citing *Stillwell*, 434 Md. at 257, 74 A.3d at 733).

Here, with respect to the Boteler, Patel and Jackson matters, Respondent violated Rule 1.15 because he failed to place the retainer fees received in a trust account or otherwise obtain informed consent from his clients to do otherwise.

### Rule 1.16(a)(2)

Rule 1.16(a)(2) provides that "an attorney shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if: the attorney's physical or mental condition materially impairs the attorney's ability to represent the client." Judge Cummins concluded that Respondent violated Rule 1.16(a)(2), because he "should have either declined the representation or withdrawn from the representation due to his ongoing substance abuse issues which materially impaired his ability to represent the clients."

Rule 1.16(a)(2) is violated where an attorney fails to withdraw from the representation of a client when he or she suffers from a mental or physical condition and that condition materially impairs the lawyer's ability to represent the client. In the present situation, a default judgment was entered against Respondent because he failed to participate in the disciplinary proceeding. And based upon his failure to respond to any discovery requests, Judge Cummins also granted Bar Counsel's Motion for Sanctions, which, provided in part "that each of [the] averments in the Petition for Disciplinary or Remedial [A]ction are deemed admitted." Such averments included the assertion that "[u]pon information and belief, the Respondent is addicted to crystal methamphetamine."

28

Accordingly, because Respondent is deemed to have admitted the averments as alleged in the Petition, we sustain the Rule 1.16(a)(2) violation. *See Rheinstein*, *supra*, 466 Md. 648, 223 A.3d 505.

### Rule 1.16(d)

Rule 1.16(d) requires an attorney to protect a client's interests after the representation ends. The failure to return unearned fees and documents regarding the representative matter violates this Rule. *Hamilton*, 444 Md. at 191, 118 A.3d at 974; *see also Attorney Grievance Comm'n v. Park*, 427 Md. 180, 189–90, 46 A.3d 1153, 1158 (2012).

Respondent violated Rule 1.16(d) with respect to the Boteler, Huber, Patel and Jeffreys matters, as Judge Cummins concluded, when he failed to refund retainer fees he had failed to earn. Respondent further violated this Rule by failing to return Mr. Boteler's and Mr. Huber's files as requested.

### Rule 3.2

Rule 3.2 requires that an "attorney shall make reasonable efforts to expedite litigation consistent with the interests of the client." The Rule is violated when an attorney delays in taking "fundamental litigation steps in pursuit of the client's interests." *Garrett*, 427 Md. at 226, 46 A.3d at 1179; *see also Attorney Grievance Comm'n v. Patterson*, 421 Md. 708, 737, 28 A.3d 1196, 1213 (2011) (concluding that Patterson violated Rule 3.2 when he failed to serve process on opposing parties and failed to undertake discovery). An attorney also violates Rule 3.2 when he or she fails to comply with discovery requests,

causing the judge to impose sanctions against the attorney's client. *Attorney Grievance Comm'n v. Brown*, 426 Md. 298, 322–23, 44 A.3d 344, 359 (2012). An attorney may further violate the Rule where he or she fails to serve necessary documents or fails to appear at scheduled conferences and hearings. *Garrett*, 427 Md. at 226, 46 A.3d at 1179.

*Darshna Patel*

Respondent violated Rule 3.2 with respect to his representation of Ms. Patel, as Judge Cummins concluded, when he failed to respond to discovery requests by opposing counsel, resulting in the imposition of sanctions, which precluded Ms. Patel from proffering expert testimony. Respondent also violated the Rule when he failed to communicate to Ms. Patel the settlement offers made by Mr. Saxena, resulting in the protraction of the litigation. He further violated the Rule by failing to involve Ms. Patel in litigation or otherwise prepare her for trial.

*LeeAnne Jeffreys*

Respondent similarly violated Rule 3.2 with respect to his representation of Ms. Jeffreys, as Judge Cummins concluded, when he failed to respond to discovery requests by opposing counsel, resulting in the imposition of sanctions which required Ms. Jeffreys to pay $822.50 in attorneys' fees, a judgment in the amount of $1,000.00 against Ms. Jeffreys and prohibited her from introducing evidence at trial not produced in discovery.

Rule 3.3

Rule 3.3(a)(1) states that an attorney "shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the attorney."

30

Respondent violated this Rule, as Judge Cummins concluded, when he lied to the court by stating that he was late for the scheduled hearing because he had been admitted to the hospital with a stomach virus, when in fact, he had not.

<u>Rule 3.4</u>

Rule 3.4(c) prohibits an attorney from knowingly disobeying "an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." Rule 3.4(d) prohibits an attorney from, "in a pretrial procedure, mak[ing] a frivolous discovery request or fail[ing] to comply with a legally proper discovery request by an opposing party." *See Attorney Grievance Comm'n v. Bellamy*, 453 Md. 377, 401–02, 162 A.3d 848, 861–62 (2017) (concluding that the attorney violated Rule 3.4 when she "directly flouted the court's order" by failing to produce discovery even after the entry of a motion to compel, thus, "'knowingly disobey[ing] an obligation' she was bound to perform for the court").

Respondent violated Rules 3.4(c) and (d) with respect to the Patel and Jeffreys representations, as concluded by Judge Cummins, when he failed to produce discovery even after the court entered a motion to compel and motion for sanctions. He further violated the Rule by failing to comply with the various filing deadlines in the Patel matter.

<u>Rule 8.1</u>

Rule 8.1(b) compels attorneys to demonstrate candor and cooperation with the disciplinary authorities of the Bar. An attorney violates this Rule if he or she does not "answer timely requests from the Attorney Grievance Commission regarding a complaint

in a potential disciplinary matter." *Hamilton*, 444 Md. at 192, 118 A.3d at 974 (quoting *Brown*, 426 Md. at 323, 44 A.3d at 360).

Respondent violated Rule 8.1(b), as Judge Cummins concluded, when he repeatedly failed to respond to Bar Counsel's written requests for responses to the complaints received. He further violated the Rule when he failed to attend a scheduled meeting he had with investigators on January 31, 2019.

### Rule 8.4

Judge Cummins concluded that Respondent violated Rules 8.4(a), (c) and (d).

We conclude that Respondent violated Rule 8.4(a) based upon our conclusion that he violated other rules of professional conduct. *See Attorney Grievance Comm'n v. Van Nelson*, 425 Md. 344, 363, 40 A.3d 1039, 1050 (2012) ("Rule 8.4(a) is violated when other Rules of Professional Conduct are breached.").

Rule 8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." "The intentional misappropriation of client funds 'is an act infected with deceit and dishonesty.'" *Hamilton*, 444 Md. at 192–93, 118 A.3d at 975 (quoting *Attorney Grievance Comm'n v. Cherry-Mahoi*, 388 Md. 124, 161, 879 A.2d 58, 81 (2005)). This Court has consistently found that an attorney's misappropriation of client funds violates Rule 8.4(c). *Id.*; *see also Attorney Grievance Comm'n v. Wills*, 441 Md. 45, 57–58, 105 A.3d 479, 487 (2014); *Attorney Grievance Comm'n v. Nwadike*, 416 Md. 180, 197, 6 A.3d 287, 297 (2010); *Attorney Grievance Comm'n v. Nussbaum*, 401 Md. 612, 642, 934 A.2d 1, 18 (2007); *Attorney Grievance Comm'n v. Snyder*, 368 Md. 242, 261, 793 A.3d 515, 526 (2002).

32

We also note that there "is significant overlap between [Rule] 3.3(a)(1) and 8.4(c)," such that a "lawyer that violates [Rule] 3.3(a) generally violates [Rule] 8.4(c) as well." *Attorney Grievance Comm'n v. Steinhorn*, 462 Md. 184, 198–99 (2018) (citation omitted). "This overlap occurs because both rules are violated when a lawyer—regardless of intent— knowingly makes a false statement to the court." *Id.*

In the present case, we agree with the hearing judge's conclusion that Respondent violated Rule 8.4(c) with respect to each of the representative matters under scrutiny when he "took funds from clients, failed to safekeep those funds, and, in some instances failed to return the funds following the termination of the representation." We further note that Respondent violated the Rule when he lied to the court about the reason for his tardiness in the Jeffreys' matter.

"A lawyer engages in conduct prejudicial to the administration of justice," thereby violating Rule 8.4(d), "when he or she engages in conduct that 'tends to bring the legal profession into disrepute.'" *Attorney Grievance Comm'n v. Plank*, 453 Md. 446, 465–66, 162 A.3d 888, 899 (2017) (quoting *Attorney Grievance Comm'n v. Basinger*, 441 Md. 703, 712, 109 A.3d 1165, 1170 (2015)). Generally, an attorney violates Rule 8.4(d) "where the lawyer's conduct would negatively impact the perception of the legal profession of a reasonable member of the public." *Attorney Grievance Comm'n v. Sacks*, 458 Md. 461, 514, 183 A.3d 86, 116 (2018) (quoting *Attorney Grievance Comm'n v. Chanthunya*, 446 Md. 576, 602, 133 A.3d 1034, 1049 (2016), *reconsideration denied* (Apr. 21, 2016)).

"We have held that failure to be punctual in a scheduled court appearance is 'not only detrimental to the administration of justice but also constitute[s] discourteous conduct

degrading to the tribunal.'" *Hamilton*, 444 Md. at 196, 118 A.3d at 977 (quoting *Attorney Grievance Comm'n v. Ficker*, 319 Md. 305, 315, 572 A.2d 501, 505–06 (1990)). Even more egregious and offensive to the administration of justice is an attorney's failure to appear altogether at a court-scheduled hearing. *Id.* We have also repeatedly found that the misappropriation of client funds to be prejudicial to the administration of justice. *Hamilton*, 444 Md. at 196–97, 118 A.3d at 977; *Nussbaum*, 401 Md. at 642, 932 A.3d at 18–19; *Cherry-Mahoi*, 388 Md. at 159, 879 A.2d at 80; *Zuckerman*, 386 Md. at 374, 872 A.2d at 713.

In the instant matter, throughout Respondent's multiple representations, he engaged in conduct that was prejudicial to the administration of justice in violation of Rule 8.4(d), as Judge Cummins concluded. He repeatedly failed to timely appear at hearings, meetings and conferences; in one instance, he even failed to appear altogether. He failed to comply with discovery requirements, resulting in the imposition of sanctions against his clients. Respondent's gross mishandling of client funds and his dishonest statement to the circuit court also mandate the conclusion that he violated Rule 8.4(d), as his misconduct surely sullied the perception of the legal profession of a reasonable member of the public and egregiously interfered with the administration of justice.

## SANCTION

In light of Respondent's numerous and serious violations, and lack of mitigating factors, we have disbarred him from the practice of law in Maryland.

The purpose of attorney disciplinary proceedings "is not to punish the lawyer, but to protect the public from those unfit to practice, bolster the public's confidence in the legal

34

system, and deter other lawyers from engaging in similar misconduct." *Hamilton*, 444 Md. at 198, 118 A.3d at 978. The public is protected by attorney sanctions because they demonstrate "to members of the legal profession the type of conduct which will not be tolerated." *Attorney Grievance Comm'n v. Gallagher*, 371 Md. 673, 714, 810 A.2d 996, 1020 (2002) (citation omitted). In crafting a sanction, our task is to "evaluate each attorney grievance matter on its own merits, considering the particular facts and circumstances in order to determine an appropriate sanction." *Hodes*, 441 Md. at 205–06, 105 A.3d at 574 (citing *Attorney Grievance Comm'n v. Coppola*, 419 Md. 370, 404, 19 A.3d 431, 451). In so doing, we often consider various aggravating factors found in Standard 9.22 of the American Bar Association for Imposing Lawyer Sanctions when imposing discipline, which are:

(a) prior disciplinary offenses;

(b) dishonest or selfish motive;

(c) a pattern of misconduct;

(d) multiple offenses;

(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of victim;

(i) substantial experience in the practice of law;

(j) indifference to making restitution;

35

(k) illegal conduct, including that involving the use of controlled substances.

*Standard 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions* (1992). We also consider mitigation and will evaluate whether any of the following factors exist:

> absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*Coppola*, 419 Md. at 407, 19 A.3d at 453 (quoting *Attorney Grievance Comm'n v. Gordon*, 413 Md. 46, 63, 991 A.2d 51, 61 (2010) (further citation omitted)).

The hearing judge, although not crafting a sanction, addresses aggravating and mitigating factors and includes findings relevant to them. *See Attorney Grievance Comm'n v. Ucheomumu*, 462 Md. 280, 323–28, 200 A.3d 282, 307–10 (2018), *reconsideration denied* (Dec. 12, 2018).

With respect to aggravation, Judge Cummins found several 9.22 factors relevant to the present case, those being (b) dishonest or selfish motive, (c) a pattern of misconduct, (d) multiple offenses, (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency, (g) refusal to acknowledge wrongful nature of conduct, (i) substantial experience in the practice of law and (j) indifference to making restitution, findings with which we agree based upon

36

Respondent's repeated disregard of his clients' causes, misappropriation of client funds and decision to not participate in the disciplinary process whatsoever.

Judge Cummins found no factors in mitigation to be implicated, nor did Respondent proffer any for our consideration, as he failed to take any part in the disciplinary matter.

In *Attorney Grievance Commission v. Hamilton*, we noted that an attorney's "repeated neglect of clients" was "sufficient justification alone for disbarment." 444 Md. at 198, 118 A.3d at 978 (citing *Attorney Grievance Comm'n v. Faber*, 373 Md. 173, 817 A.2d 205 (2003)). In that case, we concluded that Hamilton violated Rules 1.1, 1.2, 1.3, 1.4, 1.5, 1.15, 1.16, 8.1 and 8.4, some of which he violated on multiple occasions, thus, warranting the sanction of disbarment. *See also Wallace*, 368 Md. at 290–91, 793 A.2d at 543–44; *Attorney Grievance Comm'n v. Manning*, 318 Md. 697, 703–06, 569 A.2d 1250, 1253–54 (1990).

"Failure to return unearned fees is cause for disbarment as well." *Hamilton*, 444 Md. at 198–99, 118 A.3d at 978; *Attorney Grievance Comm'n v. Shakir*, 427 Md. 197, 207, 46 A.3d 1162, 1168 (2012). Violations of Rules 1.5 and 1.15 also generally support disbarment, as the entrustment of a client's money involves a responsibility of the highest order. The appropriation of a clients' trust funds for the personal use and benefit of an attorney "without clear authority to do so cannot be tolerated." *Hamilton*, 444 Md. at 199, 118 A.3d at 978 (quoting *Cherry-Mahoi*, 388 Md. at 161, 879 A.2d at 80).

Respondent also violated Rules 8.4(a), (c) and (d). Such rule violations "center on the fitness of an attorney to practice law" and warrant disbarment, especially when the acts underlying these violations are repeated. *Hamilton*, 444 Md. at 199, 118 A.3d at 979.

37

Respondent repeatedly failed his clients in the same fashion. He disregarded their requests for information regarding their cases, ignored discovery requirements resulting in the imposition of sanctions, missed meetings, consistently failed to appear timely for hearings, and, most significantly, failed to protect his clients' trust money, all of which indicate that he lacks the requisite characteristics to continue practicing law in Maryland. *See id.* Furthermore, he lied to the circuit court about his reasons for failing to timely appear. His intentionally dishonest conduct is beyond excuse and, as such, disbarment must follow. *See id.* at 200, 118 A.3d at 979; *Attorney Grievance Comm'n v. Foltz*, 411 Md. 359, 413, 983 A.2d 434, 466 (2009).

Finally, Respondent's "otherwise unacceptable behavior" was "exacerbated" by his failure to respond to Bar Counsel's investigation. *See Hamilton*, 444 Md. at 200, 118 A.3d at 979; *Attorney Grievance Comm'n v. Lara*, 418 Md. 355, 365, 14 A.3d 650, 656 (2011). In *Attorney Grievance Commission v. Wallace*, *supra*, 368 Md. 277, 793 A.2d 535, with respect to similar rule violations, we stated:

> The record in the case at bar does not indicate that respondent had received any previous reprimands or sanctions from this Court; nevertheless, the volume and severity of the complaints lead us to conclude that the appropriate sanction is disbarment. Respondent has engaged in a pattern of conduct that only the most severe sanction of disbarment will provide the protection to the public that this procedure is supposed to provide. Respondent's lack of diligence, his lack of preparation, his failure to communicate with his clients, his charging of unreasonable fees, his failure to account for and return monies, his misrepresentations, and his failure to comply with Bar Counsel's requests all lead to the most severe sanction of disbarment.

*Id.* at 293, 793 A.2d at 545.

38

Here, Respondent demonstrated similar misconduct. He accepted fees from multiple clients, failed to provide those clients with legal services and ultimately misappropriated the fees they gave him. Respondent repeatedly failed to respond to the disciplinary proceedings initiated against him and offered no evidence of remorse or mitigation. Accordingly, disbarment is the only remedy adequate to protect the public.